(45 Misc. Rep. 441.)

### MacDONALD v. SUN PRINTING & PUBLISHING ASS'N.

(Supreme Court, Trial Term, Kings County.   December, 1904.)

**1. LIBEL—ACTIONABLE WORDS—QUESTION FOR JURY.**

Where a critic published of a book and its author that they were a "scandal" and "shameless," and that the author was "prurient," under circumstances that would not justify the charges beyond question, it was for the jury to say whether the inferences drawn by the critic from the facts were reasonably possible, and therefore permissible.

Action by Arthur MacDonald against the Sun Printing & Publishing Association.   On motion to direct a verdict for defendant, reserved until after verdict, and to set aside the verdict for plaintiff.   Motions denied.

Abram H. Dailey, for plaintiff.
Franklin Bartlett, for defendant.

GAYNOR, J.   The alleged defamatory article gives the following facts:   The plaintiff was employed in the Bureau of Education of the national government at Washington for several years under the title of "Specialist in Education as a Preventative of Pauperism and Crime."   He published a personal advertisement in newspapers that a gentleman of high social and university position desired correspondence with young educated women of high social and financial position, and that they must give detailed accounts of their lives.   He gave no name, but a lock-box in the post office at Washington, D. C., as his address.   The plaintiff corresponded with the women who answered (which his evidence shows to have been a large number), and got them to write all he could concerning

themselves. He also made appointments with some of them (he testified 40 to 50) in streets and public places, and in some cases in their homes, or other private houses, and met them and talked with them. He then wrote a book with the title "Girls Who Answer Personals," out of the materials he had thus collected, and sold it for 50 cents a copy through his lock-box. On the title page he put "Dr." before his name, but he was not a doctor of any kind.

The defendant put the book in evidence. It contains many of the letters of the women who wrote to the plaintiff. It also gives the particulars of the personal interviews he had with some of them, including in some cases their physical appearance, manner and temperament. The rest of the book is made up of general matter and comment pertaining to the sexual instinct and the relation of the sexes.

There is no fact in dispute. This brings the case under the head that if the facts be undisputed, and different inferences may not be drawn from them, it is for the court to direct a verdict. I sent it to the jury on the question whether the inferences of fact drawn and expressed by the defendant, and upon which the charge of defamation depends, were reasonably possible and therefore permissible.

Those inferences are, in substance, that the conduct of the plaintiff and the book were a "scandal," "shameless," and that the plaintiff was "prurient." Around these words cling all that was claimed to be or deemed defamatory on the trial.

The occasion of the defendant's criticism was that the plaintiff was working to get Congress to pass a bill which he had prepared to establish in the Department of Justice a "laboratory for the study of the abnormal classes," with the object of having himself employed by the government to run it, he having been dropped from the Bureau of Education; all of which is revealed in the article sued upon.

The plaintiff claimed in the witness box on cross-examination that he collected the material, and wrote and circulated the book, from pure and worthy motives, solely in the interest of the study and development of the science of criminology, for the benefit of the human race. He said that his object was to study women who are at the border line between chastity and looseness, with a view to the future help and preservation of such women.

The plaintiff was holding his said position in the Bureau of Education when he did all of these things, but he did not do them for the government, or get permission therefor of those over him, or file the material he collected with the bureau in which he was employed, but used it for his own profit in the way already stated.

Though the plaintiff testified on corss-examination in respect of his motives and object, I did not and do not deem the evidence relevant or competent. On the contrary, the question is not whether he can now in the witness box convince a jury of the purity of his motives and object, but what inferences were and are permissible to the defendant or any one else in discussing his book and his conduct, and his personality as revealed thereby. It may be that

the plaintiff is even able by his persuasive powers to now convince the defendant that in drawing the inferences from his book which it did unaided by his presence and explanation, it was mistaken, but that would be wholly immaterial. The question is did his book and conduct justify such inferences?

Any one who publishes a book, or does any public act, challenges discussion and criticism. Every one has the right to indulge in such discussion and criticism freely and fully, and to draw inferences and express opinions on the facts in the same way. That his opinions and inferences are far-fetched, high-strung or severely chaste or moral, or contrary to other inferences or opinions that seem more reasonable, does not matter so long as there be a basis for them. The opinion of the smallest minority often becomes the opinion of a majority or of all. The prevailing opinion of one generation often becomes such an absurdity to the next, that the wonder then is how any one ever entertained it, as John Stuart Mill says. It is for this reason that the law gives full latitude in the expression of opinions on things of general concern. So long as such discussion and criticism keep within matters of reasonable opinion on the facts, they cannot be defamatory. If, on the contrary, the personal character of the individual be touched by false statements, or by aspersions with no facts to rest upon, the writer is on the common ground of defamation.

Criticism is no exception in the general law of defamation, though some dicta would lead one to suppose that it is. A critic is no more permitted to make false aspersions or statements of fact which are defamatory than any one else. Criticism is an expression of opinion on facts from which differences of opinion may reasonably arise, and if it sticks to that, it is not defamatory, no matter though it be severe, hostile, rough, caustic, bitter, sarcastic or satirical, for these are the weapons of criticism; and no matter how different the opinion may be to the opinion of others, or of a majority however great, provided it derives its color from the facts. The case of a critic may be likened to that of an advocate in court, except that the law of privilege does not apply. Sickels v. Kling, 31 Misc. Rep. 287, 64 N. Y. Supp. 252.

Nor does the motive of the critic enter into the case. If he keeps within the bounds of criticism, it matters not what his motives are; and if he goes outside, and makes false defamatory aspersions or statements of fact concerning the individual, it matters not what his motives are—he is liable in a civil action. To say that every one has a right to comment on matters of public concern, "provided he does so fairly and with an honest motive," as is sometimes done, displays a confusion of ideas; for if he does it fairly, his motive does not matter. "Our laws allow a man to speak the truth although it be done maliciously." Baum v. Clause, 5 Hill, 199. The rule was stated by a learned English judge in charging a jury to be that "where the public conduct of a public man is open to animadversion, and the writer who is commenting upon it makes imputation upon his motives, which arise fairly and legitimately

out of his conduct, so that the jury shall say that the criticism was not only honest but also well founded, an action is not maintainable." Odgers, p. 39, quoting from Cockburn, C. J. Every lawyer versed in the law of libel must see the confusion of this, for if well founded the question of its honesty is immaterial. And Odgers says (page 48): "Therefore all fair and honest criticism on any published book is not libellous, unless the critic goes out of his way to attack the private character of the author." This, again, is contradictory, for going out of the way to attack the author's private character is not "fair and honest criticism"; it is not criticism at all, for criticism is confined to the expression of opinions on facts about which opinions may in good faith differ. It is only false aspersions or statements of fact that can be defamatory. And they are no part of criticism. Where they begin criticism ends. Nor does the law of privilege apply to criticism at all. Ullrich v. N. Y. Press Co., 23 Misc. Rep. 168, 50 N. Y. Supp. 788.

In the present case the plaintiff is charged with pruriency, scandal and shamelessness. This affects his personal character. If his book and his conduct lay him open to the charge, the defendant did not go outside the realm of criticism, and is not liable. If they do not, then the defendant is liable.

It is not always easy to determine whether the question presented, i. e., the question whether the inference drawn and expressed by the defendant is a reasonably possible one, and therefore permissible, is one of law or one of fact, i. e., a question to be decided by the court, or one to be decided by the jury. Cases could be imagined in which the question would be one of law. If, for instance, one should write advocating murder, it would be for the court to rule that the inference that he was a murderous character was permissible. Murder is an unmistakably defined crime, and there can be no doubt about what it is.

But what of pruriency? It is an elastic term. Matter and conduct which some good people deem prurient other good people deem chaste. There is no fixed standard of pruriency. It is largely a matter of education and taste. And the same is true in respect of scandal and shamelessness.

Nevertheless, one may do or say or write things that are beyond question scandalous, shameless and prurient, and that would be a case presenting a question of law and not of fact. But I am finally convinced that the present is not such a case. I have looked over the book carefully, and considered the plaintiff's conduct, and I think the question was for the jury, i. e., it was for them to say whether the inferences drawn by the defendant from the facts were reasonably possible and therefore permissible. If the inferences be false, i. e., such as the facts will not bear at all, then they are defamatory. It is not enough in a given case that the jury disagree with the inferences. The question is whether they may be reasonably drawn, as matter of argument, although other and opposite and, in the opinion of many or most people, better inferences may also be drawn.

The case of Whistler v. Ruskin serves as an illustration. There the greatest English art critic of the last century wrote of one who bids fair to rank as the greatest English artist of the last century:

"For Mr. Whistler's own sake, no less than for the gallery of the purchaser, Sir Coutts Lindsay ought not to have admitted works into the gallery in which the ill-educated conceit of the artist so nearly approached the aspect of wilful imposture. I have seen and heard much of cockney impudence before now, but never expected to hear a coxcomb ask 200 guineas for flinging a pot of paint in the public's face."

The words "wilful imposture" were held by the jury (for it was left to the jury) to be a false aspersion or statement of fact involving the personal integrity of the plaintiff, and not an expression of opinion concerning his art or him as an artist. An inference of imposture was held not permissible by the jury. It was not taken to itself as a question of law by the court, although it would seem that the inference to be drawn from the picture and the fact of its sale by the plaintiff for a work of his art was closer to being a question of law than is the question here; for whether it was a work of art instead of a daub was necessarily a matter of opinion, and the artist was entitled to his opinion, and to rate the value of his work on his opinion.

The motion to direct a verdict, and also the motion for a new trial, are denied.