GEORGE B. FOSTER v. JAMES E. SCRIPPS.

*Newspaper libel—Privilege—City physician.*

A newspaper statement to the effect that a designated city physician, appointed by the common council and not chosen at a public election, has caused the death of a patient by reckless treatment is not privileged, and if false, is libelous.

The rules which divest spoken words of an actionable quality do not necessarily apply to written or printed libels.

Newspapers have no privilege that will excuse them in printing libels of which any other publication would not be excused.

Error to Superior Court of Detroit. Submitted June 13. Decided October 22.

CIVIL ACTION FOR LIBEL. Plaintiff brings error.

*Griffin & Dickinson* for plaintiff in error. Every written publication concerning a man which as a necessary or proximate consequence, causes him pecuniary loss, is *prima facie* libelous, *Weiss v. Whittemore*, 28 Mich., 375, or brings shame and disgrace on him, makes him an object of hatred, ridicule and contempt, *Fonville v. M'Nease*, 1 Dudley, 303, or tends to disgrace or degrade him in society, *State v. Jeandell*, 5 Harring., 475, or makes him liable to punishment, or infamous, *White v. Nicholls*, 3 How., 266; *Armentrout v. Moranda*, 8 Blackf., 426; *Dexter v. Spear*, 4 Mas., 115; or if it tends to provoke a breach of the peace, *Torrance v. Hurst*, Walk., 403; *Newbraugh v. Curry*, Wright, 47; Townshend on Slander and Libel, § 20 et seq.; it is actionable to falsely charge a physician with gross ignorance or unskilfulness, *Sumner v. Utley*, 7 Conn., 257; *Secor v. Harris*, 18 Barb., 425; *Johnson v. Robertson*, 8 Port., 486; *Camp v. Martin*, 23 Conn., 86; *Gove v. Blethen*, 21 Minn., 80; *Turrill v. Dolloway*, 17 Wend., 436; *In re Moore*, 63 N. C., 397; *Wilson v. Fitch*, 41 Cal., 363; 6 Bac. Ab., 215; publications are not privileged unless honestly made, without

malice, and on probable cause or proper inquiry, *Lanning v. Christy*, 30 Ohio St., 115: 17 Amer. L. Reg., 204; *Hastings v. Lusk*, 22 Wend., 421; *Barber v. St. Louis Despatch Co.*, 5 Cent. L. Journal, 361; *Clark v. Molyneux*, 36 L. T. R. (N. S.), 466: 9 Chic. L. News, 333; *Smith v. Tribune Co.*, 4 Biss., 480; *Quinn v. Scott*, 22 Minn.; 456; *Rearick v. Wilcox*, 81 Ill., 77; *Littlejohn v. Greeley*, 13 Abb. Pr., 41; *Purcell v. Sowler*, 1 C. P. Div., 781; Cooley's Const. Lim., 431; malice may be inferred from the language of a libelous statement and from extrinsic circumstances, *Suydam v. Moffat*, 1 Sandf., 459; *Lowber v. LeRoy*, 2 id., 202; *Cheritree v. Roggen*, 67 Barb., 124; *Pattison v. Jones*, 8 B. & C., 578; *Gott v. Pulsifer*, 122 Mass., 235.

*Henry W. Montrose* and *C. I. Walker* for defendant in error. It is not libelous to charge a physician with neglect or want of skill or proper practice in a particular case, where the charge is made in spoken words, Townshend on Libel, § 194; *Poe v. Mondford*, Cro. Eliz., 620; *Foot v. Brown*, 8 Johns., 64; *Garr v. Selden*, 6 Barb., 416; *Tobias v. Harland*, 4 Wend., 537; *Swift v. Dickerman*, 31 Conn., 285; *Johnson v. Robertson*, 8 Port., 486; *Secor v. Harris*, 18 Barb., 425; statements as to official conduct are privileged, *Henwood v. Harrison*, L. R. 7 C. P., 625; *Harle v. Catherall*, 14 L. T. (N. S.), 801; *Odger v. Mortimer*, 28 id., 472; *Davis v. Duncan*, L. R. 9 C. P., 396; *Kelly v. Sherlock*, L. R. 1 Q. B., 686; *Kelly v. Tinling*, L. R. 1 Q. B., 699; *Wason v. Walter*, L. R. 4 Q. B., 73; *Turnbull v. Bird*, 2 Fost. & Fin., 508; *Gathercole v. Miall*, 15 M. & W., 318; *Palmer v. Concord*, 48 N. H., 216; malice cannot be inferred from the publication of a libelous statement, but must be proved, *Edwards v. Chandler*, 14 Mich., 471; Folkard's Starkie on Slander and Libel, § 670; Townshend on Libel, § 388; whether there is evidence of malice is a question for the court, *Spill v. Maule*, L. R. 4 Exch., 232;

*Taylor v. Hawkins,* 16 Ad. & El., 321; *Laughton v. Bishop,* 4 Privy Council App., 508-9: 4 Eng., 171.

CAMPBELL, C. J.    Plaintiff sued defendant for a libel published in the Detroit *Evening News,* attributing to him gross professional misconduct, resulting in the death of a child.    The defense was rested on the claim that the defendant had a right to publish the article as privileged, the plaintiff being one of the city physicians.

The article in question having referred to the action of the city authorities in providing for general vaccination, stated that the 'Board of Health had ordered the use of pure bovine virus, and that the operation should be performed in a certain way which excluded the use of an instrument known as a trochar.    It then proceeded as follows:

"Most of the physicians acted under the instructions of the Board of Health.    Several, who thought they could make more money by ignoring the rule, did so.    Notably Dr. Foster, the physician of the second district, who preferred to use the "trocar" with which he was enabled to perform vaccinations at the rate of 100 a day, instead of the 20 or 30 which would have been possible with the proper instrument.    He has been several times called to account for his departure from the rules of the Board, but has persisted in his course, arguing that the "trocar" was a proper and safe instrument to use.    At last

A TERRIBLE INSTANCE

has occurred, which completely refutes all the doctor's arguments.    There is no doubt in the mind of any one who has taken the trouble to investigate the case but that James Connelly, the infant son of Mr. Connelly, residing at 162 Seventh street, died last night from the effects of an operation performed upon him some two weeks ago by Dr. Foster.    The operation was vaccination; the instrument, the trocar.    Mr. Connelly had three children, aged five, two, and one year respectively. Up to about two weeks ago they had been in comparatively good health.    Then came Dr. Foster with his trocar and vaccinated them.    Soon after all of them were sick, not alone with vaccine fever, but, according to the opinion of Dr. F. A. Spaulding, the physician who afterwards attended them, also with the scarlet

fever.    Where did the children get this latter disease? There was none of it in the neighborhood.    The children were very young and were always kept in or about the house.    The fact that the three were taken simultaneously with the same disease, and that it came on simultaneously with the vaccine fever, would seem to prove conclusively that the scarlet fever had been inoculated into their systems by Dr. Foster's trocar, which had probably a few hours before pierced the arm of some scarlet fever patient in some remote part of the city.

## A HOME DESOLATED.

One of the children died Monday night.    Another now lies at the point of death, and the third may yet die, thus leaving the parents childless.

The common council should immediately take this matter in hand and cause a thorough investigation to be made into all the circumstances of the case, and if Dr. Foster has been guilty of malfeasance, suspend him from office and cause him to be prosecuted for the same."

After proving the publication of this and some similar articles, and the responsibility of defendant, plaintiff rested.    Defendant introduced considerable testimony concerning the course of the common council and Board of Health, and the different methods of vaccination, and the acts and opinions of plaintiff.    The court shut out all testimony offered by plaintiff on these subjects, and upon some other matters which can only be explained by the charge which took the whole case away from the jury, and directed a verdict for defendant, without giving any reasons therefor.

The only conceivable ground is the privileged character of the publication, which, as the case stands, would make it lawful, whether malicious or not, and whether founded on reasonable belief or entirely baseless.

We have not been able to discover on what theory the court below based any such charge as was given.

That the article if not privileged, was libelous, is beyond question.    The authorities on the non-actionable character of spoken words, have no necessary bearing on the character of written or printed libels.    The doctrine

is elementary that written articles which in any way tend to bring ridicule, contempt or censure on a person are libelous, and are actionable unless true or privileged. This article not only traced the death of one person and the sickness of others to plaintiff, but laid the blame on his willful misconduct upon sordid motives. . It was not claimed on the trial, and the plea disclaims the truth of the principal charge, that the trochar was used whether its use was or was not improper.

We are therefore not required to discuss the somewhat, extraordinary proposition that the city Board of Health are authorized to determine *ex cathedra* the methods of medical treatment.

The question is simply whether such false and damaging charges as have a necessary tendency to ruin the reputation and business of a medical man, may be made without responsibility to legal redress, simply because he happens to be a city physician.

It is not and cannot be claimed that there is any privilege in journalism, which would excuse a newspaper when any other publication of libels would not be excused. Whatever functions the journalist performs are assumed and laid down at his will, and performed under the same responsibility attaching to all other persons. The greater extent of circulation makes his libels more damaging, and imposes special duties as to care to prevent the risk of such mischief, proportioned to the peril. But whatever may be the measure of damages, there is no difference in liability to suit.

Allowing the most liberal rule as to the liability of persons in public employment to criticism for their conduct in which the public are interested, there certainly has never been any rule which subjected persons public or private to be falsely traduced. The nearest approach to this license is when the person vilified presents himself before the body of the public as a candidate for an elective office, or addresses the public in open public

meetings for public purposes.   But even in such cases, we shall not find support for any doctrine which will subject him without remedy to every species of malevolent attack.

But where a person occupies an office like that of a city or district physician, not elected by the public, but appointed by the council, and subject only to removal by the council, we have found no authority, and we think there is no reason, for holding any libel privileged except a *bona fide* representation made without malice to the proper authority, complaining on reasonable grounds. The case of *Purcell v. Sowler*, 1 C. P. D., 781, affirmed on appeal, 2 C. P. D., 215, is a case as nearly like the present one as is often found; and while the Court of Appeals—on this point differing from the lower court—held the office of public physician gave the public an interest in having it properly filled, it was held no discussion or publication was privileged, of facts charged against him, except when made in the course of a lawful proceeding against him.

The good sense of such a rule can hardly be doubted. Every man's reputation is as sacred as his property. He cannot complain when the truth is told.   But he can always complain of falsehoods which are not told in an honest attempt to make him responsible to a proper tribunal, or in some other performance of duty.   The publication in such cases puts him in a direct way of having the truth established, and the wrong cannot usually be done without furnishing its antidote.

If a medical officer is charged in the public press with professional misconduct, the immediate and necessary effect is to destroy confidence in him and prevent him from gaining a livelihood by his profession. The readers of the paper have no means of investigation and may never have.   The charges may never reach an investigation, and he may have no means of compelling one.   If he is obliged to put up with such a wrong the consequences will be monstrous.   The law cannot recog-

nize any such immunity from responsibility, nor can the rights of individuals be so trifled with.

The case of *Dickeson v. Hilliard*, L. R. 9 Exch., 79, sums up the cases of privilege very neatly and briefly. In that case, without contemplating any petition or other method of examining into the facts, two days after an election, agents of one of the candidates sent to an agent of the other a document charging the plaintiff with bribery. This was held not privileged; and the court in deciding the point, mentioned the various divisions of privileged communications lying outside of those which were never questioned, and puts them in three classes. The first included such cases as *Harrison v. Bush*, 5 El. & B., 344, where a *bona fide* attempt was made to have a magistrate removed from office by appealing to a person in authority. It was claimed that the application should have been made to the Chancellor instead of to a Secretary of State, but held that as the Queen herself was the acting power, a communication made to either officer was in effect made to her, and privileged if made in good faith to redress a grievance.

The second class included communications like those made by military officers to courts of inquiry or to the proper authority to aid in the prosecution of such inquiry. *Dawkins v. Lord Rokeby*, L. R. 8 Q. B., 255, affirmed 7 H. of L., 744, was such a case.

The third class included those cases in which information was given by one who was under a legal or moral duty to give it, to another who had a right to ask it. The most familiar instance of this is in answering inquiries concerning servants.

But as it was very well pointed out, there is no right to make untrue and injurious statements concerning others when they are not made to persons having right and power to investigate, and in an honest attempt to invoke such investigation or answer such inquiry.

In our opinion the libel in the present case was not privileged, and the plaintiff was improperly deprived of his remedy.

The judgment must be reversed with costs, and a new trial granted.

MARSTON and GRAVES, JJ. concurred.

COOLEY, J.   The difficult problem in the law of libel is how to reconcile privilege with a proper protection of the rights of individuals.   Privilege-in the law of libel implies some liberty of discussion and publication, and protection therein even though the discussion proves to be mistaken and the publication materially false.   When privilege exists, therefore, individuals whose character or actions are impugned may suffer without remedy, and the plainest principles of justice require that immunity in injurious discussion should be given only within such limits as may be justified on reasonable grounds.   There are many cases in which the public benefits of free discussion are so great that privilege must be admitted even though individual injury may be serious; the one overshadowing the other to such a degree that only the public interest can be regarded when it appears that the discussion or publication has been -in good faith.   But there are other cases where the public benefits of free discussion may be equalled or overbalanced by public evils, and where consequently the allowance of privilege might cause private injuries without any compensating public benefits except such as are offset by public evils. The present is a case of this sort.

The reason for permitting a privilege of discussion in the case of a city physician must be this; that by operating on public opinion through the means of public discussion, the board having power of removal might indirectly be influenced, and a removal brought about in the case of an unfit officer.   But if the discussion proves to be wholly unwarranted by the facts, there is not only grievous private injury, but also serious public injury; public confidence in an officer whose duties are such as to render confidence extremely important to the continuous useful discharge of his duties, is weak-

ened or destroyed unjustly when it ought rather to have been supported and strengthened. No such counter-balancing evils could exist where the party assailed was simply a person proposed for the office and not an actual incumbent; and in assenting to the conclusion of the court I confine my concurrence to the exact case before us.