CHARLES HATT v. THE EVENING NEWS ASSOCIATION.

[See *post,* 119.]

*Libel and slander—Damages.*

1. Any printed publication, the natural result of which is to bring ridicule or contempt upon the plaintiff, is, if untrue, libelous; citing *Tryon v. Evening News,* 39 Mich. 636.

2. Where, in a suit for libel, it appears that information of the falsity of the statements contained in the article was brought home to the reporter of the defendant newspaper before the article was published, the jury may properly award exemplary damages.

Error to Wayne. (Brevoort, J.) Argued October 26, 1892. Decided December 22, 1892.

Case for libel. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson,* for appellant.

*Edmund Joncas* and *James A. Randall,* for plaintiff.

MONTGOMERY, J. This is an action on the case for libel. The publication complained of is the following:

"SCOOPED HIS COUSIN!

"WILLIAM HATT MARRIES CHARLES HATT'S INTENDED.

"THE JILTED MAN'S WEDDING TO HAVE OCCURRED "TO-NIGHT.

"*Justice Phelan Officiates at Noon To-day, and William Hatt and Annie Hack start for Toledo until the Storm Blows Over. Charles Hatt a Clerk at Mabley & Co's.*

"A triumph of youth over middle age to-day resulted

in one of the most amusing incidents in real life that has occurred in this city in many a day. The affair borders very strongly on the realms of fiction, and at the same time shows the benefits of hustling.

"Charles Hatt is a clerk in Mabley & Co.'s clothing department, and is 44 years old. For some years he has been an admirer of Annie Hack, the 22 year old daughter of John V. Hack, a painter living at 224 Sherman street. Annie is a very pretty blonde, with short hair, which curls closely, and gives her a dashing air.

"William S. Hatt is 24 years old, also a clerk, and is the son of William Hatt. He has been in the south for some months, but returned a short time ago, and proceeded to renew his acquaintance with the fair Annie. He then learned that during his absence she had engaged herself to his older cousin, Charles. But he was not daunted by a little thing like that, and laid fast and furious siege to her heart. Charles, in the mean time, had his wedding set for this evening at his boarding place on Lafayette avenue, and had engaged a clergyman to solemnize his marriage to Annie. He also employed a florist to decorate the house in fine style, and had arranged for a two-weeks vacation.

"Last night William called on Annie, and a couple of moments later Charles drew up in a coupe. William appeared to give way to his older cousin, but was hugging himself over a little scheme that he thought would take the wind out of Charles' sails in great shape. The cause of his good feeling was disclosed about 12:30 to-day, when he and Annie entered the county clerk's office, glancing anxiously behind them. William asked for a marriage license as quick as possible. 'We have only an hour to head them off,' he remarked. He was asked who, but only chuckled to himself, and said to Annie, 'We'll beat them, sure.' Annie betrayed all the nervousness that William concealed by his bravado, and was fearful that something might happen. As the license clerk was at dinner, Deputy County Clerk Marshall made out the document in short order, and William asked where they could go and get married quick. The News directed them to Justice Phelan, who made them one in short order, and was about to claim his privilege of kissing the bride, when William put his arm around her, drew her to him, and gave her a resounding smack, saying: 'There, we've beat him, and now we have 10 minutes to catch the Toledo

boat.' He stated that they would stay in Toledo overnight to let the storm blow over, and give Charles 24 hours to smother his disappointment.    While the justice was making out the certificate, William could not remain still, so great was his joy at having outwitted his cousin and captured the darling Annie.    She, however, had got over her nervousness, as the danger of any interference was past, and willingly agreed to wait while her husband took the justice and the reporter to the Normandie for some cigars. She also joked a little on Willie's exuberance of spirits, and the fact that she only changed the last two letters of her name.

"Charles Hatt, of Mabley's, says that Wm. S. Hatt is no relation of his, and that he does not intend to get married, as he is not even in love.    He also says that when he does get married he will open the champagne, and invite the reporters to have a good time."

1. It is contended that the article in question is not libelous.    It is the settled law of this State that any printed publication, the natural result of which is to bring ridicule or contempt upon the plaintiff, is, if untrue, libelous. *Tryon v. Evening News,* 39 Mich. 636; Odgers, Lib. & S. 21; Starkie, Sland. & L. 157; Newell, Defam. 34.

Was the article in question calculated to bring ridicule or contempt upon the plaintiff?    We think this question must be answered in the affirmative.    The article deals with the most sacred relation in life, and the purpose to hold the plaintiff up to ridicule is, we think, apparent. Were the test applied which prevails in some jurisdictions, namely, whether the article was such as might reasonably, according to our natural passions, be considered as provoking a breach of the peace, we are not prepared to say that this publication would not fall within it.    It is charged in this article, first, that the plaintiff was not only engaged to the young lady referred to, but that the wedding was set for the evening when the publication was made, and that the man to whom she was in fact married was a cousin of the plaintiff.    The article contains a statement

that the plaintiff denied both the alleged relationship to William Hatt and the alleged engagement. This amounted to charging the plaintiff with uttering a falsehood. In *Tryon v. Evening News, supra,* it was held that a publication which charged the plaintiff, a reporter, with violating confidence, was libelous.

2. Defendant's counsel complain of the rulings of the court in receiving testimony, the general tenor of which was (to quote from counsels' brief)—

"To show that the plaintiff was a man of extreme sensitiveness; that his feelings were deeply hurt by the remarks made by friends to him, which of themselves appear to have been entirely innocent; but, as the result of the comments of his friends, he was humiliated in his own estimation, and rendered sick and unfit to attend to his work. * * * Where the plaintiff relies upon the libelous character of the publication from its face, no evidence of special damage, or other damage except such as the law would presume would follow from the publication of the article, is admissible, unless claimed in the pleadings."

Respectable authority certainly can be found supporting this contention. Were the question a new one in this State, we should seriously doubt the correctness of the holding below. In Newell on Defamation (page 779) it is said:

"The general rule, as stated by Starkie, is that no evidence of special damage is admissible unless it be averred in the declaration, whether the special damage be the gist of the action or be used as matter of aggravation, the words being in themselves actionable. But it has been said that greater certainty is requisite where the special damage is the gist of the action than where it is merely laid by way of aggravation."

The allegation in the present case is that plaintiff—

"Hath been and now is greatly injured in his good name, fame, and credit, and brought into public scandal, humiliation, ridicule, and disgrace, and he hath suffered

much annoyance, and incurred public derision, sarcasm, and contempt, and hath otherwise been greatly injured."

In *Burt v. McBain*, 29 Mich. 260, the words spoken imputed to the plaintiff a want of chastity. The plaintiff was permitted to show that because of the slander she was excluded from society, and was affected in mind and health. This was held not to be error, although the declaration did not claim special damages. The Court say:

"These results are the natural, and we might almost say the inevitable, results of such a slander of a virtuous young woman, and they might be shown without setting them out in the declaration. * * * It is to be borne in mind that our statute makes the imputation of a want of chastity in a female actionable *per se*, so that the necessity for an averment of special damages in order to show a cause of action is not requisite here, as it otherwise would be; and some decisions to which we were referred, which were made in states where no such statute exists, are for this reason not applicable."

It is difficult to distinguish that case from the present. The rule there laid down is that, under a declaration which sets out a libel which is actionable *per se*, it is not necessary, in order to introduce evidence of so-called special damages, to show that the results which naturally flow from the publication did in fact appear.

3. Error is assigned upon the charge of the court, for the reason that under it the jury were permitted to award exemplary damages. There was no error in this instruction, as the evidence showed that information of the falsity of the statements contained in the article was brought home to the reporter before the article was published.

Complaint is also made of the following instruction:

"That the reporter of the News, Mr. Stewart, had knowledge, prior to the publication of the article, that the article was untrue, and that he could easily ascertain, and did ascertain, that it was untrue, and the negligence of the Evening News to ascertain was culpable, which neg-

lect the jury have a right to consider in assessing the damages in this case."

The ground of complaint is that the ,instruction quoted is contradictory of itself, and confusing.    It is urged that it is not true that it can be said that the defendant was chargeable with negligence in not ascertaining that the article was untrue, when in the same. instruction it is stated that it had ascertained and knew that it was untrue. The defendant could not have been prejudiced by this error, as the undisputed testimony showed that the article was published after notice of its falsity.

The judgment should be affirmed, with costs.

The other Justices concurred.