HOWARTH v. BARLOW.

(Supreme Court, Appellate Division, Second Department.   June 8, 1906.)

1. SLANDER—PUBLIC OFFICIALS—IMPROPER ACTS.

Where plaintiff, while clerk of a village board of trustees, either by design or official negligence, presented a bill for lumber delivered to him personally as a claim against the village, plaintiff's conduct was open to the fullest criticism, and defendant was not liable for slander, consisting of an interview had between defendant and the president of the village concerning such claim, to which defendant called the president's attention, and stated to him that he could see what plaintiff's intent was, advised the president to call for plaintiff's resignation, and that, if plaintiff would resign, there would be no further trouble.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, § 130.]

2. SAME—PRIVILEGE—MALICE.

Where defendant was alleged to have slandered plaintiff in a conversa·tion had concerning plaintiff's official conduct as clerk of the board of trustees of a village with the president of the village, such communication was qualifiedly privileged, and plaintiff could not recover, without proof that the words were spoken maliciously.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Libel and Slander, § 130.]

Appeal from Dutchess County Court.

Action by Edward P. Howarth against James R. Barlow.   From a judgment in favor of plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals.   Reversed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

George Worrall, for appellant.

C. Morschauser, for respondent.

GAYNOR, J.  It seems to me that a statement of the facts shows that this judgment should be reversed.

The plaintiff was the clerk of the board of trustees of the village of Wappingers Falls.  He prepared all bills against the village for presentation to the trustees for audit.  He attached a uniform wrapper or back to each; on the outside fold of which he indorsed in typewriting all the particulars of the claim, viz., the name of the claimant, the amount of the claim, what it was for, the department that incurred it, and also the word "Audited," with a space under it for the president and clerk to sign.  He left home on January 6th, 1905, to be gone until March on a vacation.  Several days before leaving he made out a number of claims in the way above described, to be presented to the trustees at their meeting to be held on January 3d, but as that meeting was not held because of a storm, he gave them in a file or bundle to a person whom he appointed to do his work in his absence, to be presented to the trustees at their next meeting on January 9th.  She presented them at the said meeting folded and in the bundle just as she had received them and without examining them.  Among them was a claim by the Millard Lumber Company for a total of $112.13 for lumber.  This all appeared on the outside of the cover in the manner already specified, but on the

inside the claim was made up of three bills of the said company, one of which, however, was made out against the plaintiff individually. Instead of its slipping through, as sometimes happens in like cases, trustee Hunter examined it and it was not audited. Of course people dealing with a village may sometimes make out their bills to the clerk, or some other official by name, who ordered the work or material, and it was not certain that the claim was not correct. Trustee Hunter asked if he could take it for investigation, and his request was granted. To make sure, he had a new bill made out by the claimant against the village, and found that it did not include the items of the said bill made out against the plaintiff; that that bill was not chargeable to the village, but was for lumber purchased by the plaintiff for his individual use. He was told by the representative of the company that the bill had been paid. He afterwards took the claim to a meeting of the taxpayers' association of the village, an organization organized to keep a wholesome eye on the official conduct of the village officials, and left it with the association to do with it as they might see meet. He told them how it had been presented and also that he had investigated it and was told by the Millard Lumber Company representative that it had been paid, i. e., before it was presented for audit. He also says he told the same to the defendant. They appointed a committee of their members, viz., the defendant and trustee Hunter, to take charge of it and present it to the grand jury. The defendant took it to the president of the village (who had been elected after it had been presented to the trustees, and knew nothing of it) and showed it to him; and the president testifies that this is what then occurred, and this is the slander, if there be any:

"He (the defendant) asked me to get a piece of paper and a lead pencil, and I did so, and he then told me to take down the amount of the three bills and foot it up, and I did so; it footed the same as it did on the wrapper, the amount of the three bills, and I looked at the bill, and said: 'This bill has not been audited.' 'Well,' he says, 'it was held up;' and I says, 'Who held it up?' and he says, 'The committee;' and I says, 'There is no committee on fuel and light, so it must have been held up by the board as a board of auditors.' Finally he says, 'Well, you see the intent,' or, 'you see what the intent was.' He says, 'You should call for his resignation, and if he will resign, there will be no further trouble.'"

Where is the slander? Did the defendant do or say anything he or any citizen had not a right to do and say? If so, what? The defendant had reasonable ground to believe that the plaintiff had prepared and caused to be presented a false claim against the village. It consisted in part of merchandise sold to him personally by the claimant. It does not need to be said that by collusion between the plaintiff and the claimant or its bookkeeper the claim as made out would be an easy method of getting the plaintiff's debt paid by the village. But much was made on the trial of evidence given (and which may have been believed by the jury) that the bill against the plaintiff had already been paid by him before the claim against the village was made out by him for audit, and of the fact that trustee Hunter communicated a statement to that effect to the taxpayers' meeting and to the defendant. But such evidence of the Millard Lumber Company representative, even if true, was by no means conclusive; on the contrary, it remains that if the bill had been paid to the claimant the amount of it could have been easily

returned to the plaintiff or divided between him and some one else by a prior collusion. Such things unfortunately are by no means unknown.

It is enough to say that the plaintiff was in the wrong, either by design or official negligence, in presenting the claim to the trustees, and that it was the right of the defendant to show the matter to the president of the village, or to any citizen, and discuss it fully, and call in question whether the plaintiff had an honest intent in including a false item in the claim. And he was by no means obliged to take the plaintiff's word for it, or that of the claimant.

The plaintiff's whole official conduct in the matter was open to the fullest criticism, and the defendant and all other persons had the right to draw from it and express any opinions or inferences that could be drawn from it, although contrary, and it may be, more reasonable ones, could be drawn from it. That such opinions or inferences are farfetched, highstrung, or severely moral, or contrary to other opinions or inferences that seem more reasonable, does not matter so long as there be a basis for them in the acts or words of the person who is the subject of such criticism. The majority or prevailing opinion is not the test of whether such opinions or inferences be permissible. The prevailing or majority opinion is often the wrong one, and for that reason the law gives full latitude to the expression of any and all opinions on things of general concern. It does not matter that the opinions or inferences expressed are not the most charitable or reasonable ones, or that they are the wrong ones, provided they be based on the facts, and the facts are capable of them. This is the rule and latitude of discussion and criticism of the conduct of every one who holds a public office, or writes a book, or does any act by which he invites public attention and criticism. MacDonald v. Sun Printing & Pub. Ass'n, 45 Misc. Rep. 441, 92 N. Y. Supp. 37.

The people are not obliged to speak of the conduct of their officials in whispers or with bated breath in a free government, but only in a despotism. On the contrary, they have a right to speak out in open discussion and criticism thereof, the only test being that they make no false statement; and this is the great safeguard of free government, and of pure government. This is fundamental among us. The defendant made no false statement, and had the right to question the intent of the plaintiff from his concedely unlawful act, and the ease with which it could be made the means of spoiling the public funds. The plaintiff's act was susceptible of an inference of wrong intent.

The plaintiff denies, or makes some question in his testimony, that he made out the claim for audit, arguing that he always used a comma instead of a period between dollars and cents, whereas the latter is the decimal mark used on the back of this claim. It was shown however by other claims made out by him that he sometimes used the period as such mark. But it is enough that if the case turned on the question of fact whether he made out the claim, the verdict would have to be set aside as against the plain weight of evidence.

Moreover, the occasion of the communication of the defendant to the president of the village was qualifiedly privileged, which was pleaded as a defense, and the jury should have been charged (if the case

be one for the jury) that unless the plaintiff proved by a preponderance of evidence that the words of the defendant were spoken maliciously, such privilege shielded the defendant, and the verdict had to be in his favor; that it would not be enough for the jury to find that the intent attributed to the plaintiff by the defendant was false, but that they must find in addition that the defendant was actuated by a malicious motive in expressing it in order to render a verdict against him. Walker v. Best, 107 App. Div. 304, 95 N. Y. Supp. 151; Hume v. Kusche, 42 Misc. 414, 87 N. Y. Supp. 109; Odgers, c. 9; Id. 182–263.

The charge of the trial judge as a whole and in particular fell altogether short of this, and the exception to his charge "that if the jury find from the evidence that the words uttered were such as imputed crime or tended to injure him in his business that the plaintiff is entitled to a verdict," is good. That is not the law for a case of qualified privilege.

The judgment should be reversed.

Judgment and order of the County Court of Dutchess county reversed, and new trial ordered; costs to abide the event. All concur.