(June 30, 1917.)

# WILLIAM DWYER, Respondent, v. W. A. LIBERT, Appellant.

[167 Pac. 651.]

LIBEL—WORDS ACTIONABLE PER SE—EVIDENCE—PRIVILEGED COMMUNI-
CATION—MALICE—EXEMPLARY DAMAGES—PLEADING.

1. In determining whether particular words are actionable *per se*, the same rule does not apply to libel as to slander.

2. A written communication of a character conducive to blacken the reputation of the person referred to, or excite ridicule or wrath against him, or destroy public confidence in him, is actionable without proof of special damage.

3. A written publication charging one with wilful falsehood in the matter of a serious business transaction must necessarily expose him to contempt and lower him in the common estimation of citizens, and is therefore actionable *per se.*

4. A complaint against a public officer filed with a body having a right to discharge him is conditionally privileged upon good faith and the absence of malice.

5. Where a complaint has been made against D., a public officer, who thereupon requests that the complaint be filed in writing, in order that he may be heard thereon, a privilege is created in the plaintiff conditioned upon good faith and the absence of malice.

6. The question of good faith and malice is one for the jury.

7. Where the general allegations of a complaint are sufficient to show that the wrong complained of was inflicted with malice or oppression or like circumstances, the complaint will be sufficient to authorize the infliction of exemplary damages.

8. Where under the pleadings of a case exemplary damages may be allowed, the pecuniary ability of the defendant is a proper matter for the consideration of the jury.

[As to complaint against public officer or employee to person or body having power in matter as privileged within law of libel and slander, see note in **Ann. Cas.** 1913C, 824.]

APPEAL from the District Court of the Second Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action for libel. Judgment for plaintiff. *Affirmed.*

Miles S. Johnson and Jas. F. Ailshie, for Appellant.

"The necessity of keeping the administration of public corporations pure and efficient, the importance of punishing derelictions of duty on the part of officials thereof, and the danger of silencing inquiry, all tend to render communications of this kind, if made in good faith, privileged, even though at times the effect of the rule may be to work injustice in particular cases." (*Greenwood v. Cobbey,* 26 Neb. 449, 42 N. W. 413, at page 415.)

"When the words alleged to be slanderous are embraced in the class of privileged communications, the plaintiff is bound to prove the existence of malice as the real motive of the defendant's language." (*Beller v. Jackson,* 64 Md. 589, 2 Atl. 916, 917.)

"If the publication is *prima facie* privileged, it devolves on the plaintiff to allege and prove that it was both false in fact, and malicious in purpose." (*Redgate v. Roush,* 61 Kan. 480, 59 Pac. 1050, 1051, 48 L. R. A. 236.)

"A petition to the executive, or other appointing power, in favor of an applicant, is a publication thus privileged. No action will lie for false statements contained in it, unless it be shown it was both false and malicious." (*Kirkpatrick v. Eagle Lodge,* 26 Kan. 384, 391, 40 Am. Rep. 316; *Fowles v. Bowen,* 30 N. Y. 20, 25; *Bearce v. Bass,* 88 Me. 521, 51 Am. St. 446, 452, 34 Atl. 411; *Coogler v. Rhodes,* 38 Fla. 240, 56 Am. St. 170, 176, 21 So. 109.)

The presumption which attaches to a writing written on a privileged occasion is that it was written in good faith and upon probable cause. (*Hemmens v. Nelson,* 138 N. Y. 517, 524, 34 N. E. 342, 20 L. R. A. 440; *Denver Public Warehouse Co. v. Holloway,* 34 Colo. 432, 114 Am. St. 171, 7 Ann. Cas. 840, 83 Pac. 131, 133, 3 L. R. A., N. S., 696; 25 Cyc. 494, 523, 524, 548; 18 Ency. Law, 2d ed., 1040; *Kent v. Bongartz,* 15 R. I. 72, 2 Am. St. 870, 22 Atl. 1023.)

When the filing of a statement with a city, without a request, is privileged, it becomes doubly so when it is so filed at the request of the plaintiff himself.

"If the plaintiff consented to or authorized the publication complained of, he cannot recover for any injury sustained by reason of the publication." (*Schoepflin v. Coffey,* 162 N. Y. 67, 56 N. E. 502, 505; *O'Donnell v. Nee,* 86 Fed. 96; 25 Cyc. 370, 371; *Shinglemeyer v. Wright,* 124 Mich. 230, 82 N. W. 887, 50 L. R. A. 129, 132; *Melcher v. Beeler,* 48 Colo. 233, 139 Am. St. 273, 110 Pac. 181, 186.)

No special damages were alleged in the complaint. None being alleged, none could be proven, and no attempt was made by the plaintiff to prove any. (*Nichols v. Daily Reporter Co.,* 30 Utah, 74, 116 Am. St. 796, 8 Ann. Cas. 841, 83 Pac. 573, 575, 3 L. R. A., N. S., 339; *Stannard v. Wilcox etc. Sewing Machine Co.,* 118 Md. 151, Ann. Cas. 1914B, 709, 84 Atl. 335, 42 L. R. A., N. S., 515.)

To be actionable without proof of special damages, the words must contain an implication such as is necessarily hurtful in its effect upon plaintiff's business, and must touch him in his special trade or occupation. (25 Cyc. 337; *Nichols v. Daily Reporter Co.,* 30 Utah, 74, 116 Am. St. 796, 8 Ann. Cas. 841, 83 Pac. 573, 575, 3 L. R. A., N. S., 339; *Brown v. Independent Publishing Co.,* 48 Mont. 374, 138 Pac. 258, 259; *Lemmer v. The Tribune,* 50 Mont. 559, 148 Pac. 338.)

The matter alleged to be libelous, contained in the charges filed with the city council, nowhere charges the plaintiff with any act which, if true, would constitute a crime, and for that reason it is not libelous *per se,* and only becomes libelous by reason of some special or peculiar effect it has on the business and standing of the complaining party, which must be charged by innuendo. It did not cause the loss of his position, and no special damage is claimed. (*Douglas v. Douglas,* 4 Ida. 293, 38 Pac. 934; *Pollard v. Lyon,* 91 U. S. 225, 23 L. ed. 308; *Moore v. Johnson,* 147 Ky. 584, 144 S. W. 765; *Jones v. Banner,* 172 Mo. App. 132, 157 S. W. 967; *Boyce v. Wheeler,* 161 Mo. App. 504, 144 S. W. 119; *Velikanje v. Milli-*

*champ,* 67 Wash. 138, 120 Pac. 876; *Whitley v. Newman,* 9
Ga. App. 89, 70 S. E. 686.)

"The civil action for libel is an action for damages, and,
as in other actions sounding in tort, compensatory damages
only can be recovered. It is obvious that these would be the
same no matter what the motive which inspired the publi-
cation." (*Spokane Truck & Dray Co. v. Hoefer,* 2 Wash.
45, 26 Am. St. 842, 25 Pac. 1072, 11 L. R. A. 689; *Wilson v.
Sun Publishing Co.,* 85 Wash. 503, Ann. Cas. 1917B, 442,
148 Pac. 774, 779.)

There is no statute in Idaho of which we are aware allowing
exemplary or punitive damages, except as applied to special
acts of injury, such as forcible entry and detainer (sections
4533 and 5106, Rev. Codes), and cutting and removing trees,
timber, etc. (sec. 4531).

If you allow the plaintiff in a civil action under a penal
statute to recover damages as a punishment and example to
the defendant, and then he is prosecuted and the state collects
a fine for the same offense, you are collecting two penalties.
The correct rule would seem to be to allow only actual dam-
ages to the plaintiff. (*Winkler v. Roeder,* 23 Neb. 706, 8
Am. St. 155, 37 N. W. 607; *Bank of Commerce v. Goos,* 39
Neb. 437, 58 N. W. 84, 23 L. R. A. 190; *Murphy v. Hobbs,*
7 Colo. 541, 49 Am. Rep. 366, 5 Pac. 119.)

Clay McNamee and Palmer H. McIntyre, for Respondent.

Every communication is privileged which is made in good
faith with a view to obtain redress for some injury received,
or to prevent or punish some public abuse. This privilege,
however, must not be abused; for if some communication be
made maliciously and without probable cause, the pretense
under which it is made instead of furnishing a defense will
aggravate the case of the defendant. (Newell on Slander
and Libel, 2d ed., p. 542, par. 1; *Bodwell v. Osgood,* 20 Mass.
(3 Pick.) 379, 15 Am. Dec. 228.)

A publication which imputes an unwillingness or refusal
to pay just debts is libelous *per se,* as tending to destroy the
party's reputation for integrity and fair dealing. (*Morgan*

*v. Andrews,* 107 Mich. 33, 64 N. W. 869; *Davis v. Hamilton,* 85 Minn. 209, 88 N. W. 744; *Mertens v. Bee Pub. Co.,* 5 Neb. Unof. 592, 99 N. W. 847; *Sanders v. Hall,* 22 Tex. Civ. 282, 55 S. W. 594; *Muetze v. Tuteur,* 77 Wis. 236, 20 Am. St. 115, 46 N. W. 123, 9 L. R. A. 86; *Ingraham v. Lyon,* 105 Cal. 254, 38 Pac. 892.)

The pecuniary circumstances of defendant are admissible in favor of plaintiff as tending to show the influence his words would have and the consequent extent of the injury. (8 Ency. Ev. 260, and notes; *Barkly v. Copeland,* 74 Cal. 1, 5 Am. St. 413, 15 Pac. 307; *Barber v. Barber,* 33 Conn. 335; *Hintz v. Graupner,* 138 Ill. 158, 27 N. E. 935; *Fowler v. Wallace,* 131 Ind. 347, 31 N. E. 53; *Herzman v. Oberfelder,* 54 Iowa, 83, 6 N. W. 81; *Stanwood v. Whitmore,* 63 Me. 209; *Shute v. Barrett,* 7 Pick. (24 Mass.) 82; *Loranger v. Loranger,* 115 Mich. 681, 74 N. W. 228; *Taylor v. Pullen,* 152 Mo. 434, 53 S. W. 1086; *Kidder v. Bacon,* 74 Vt. 263, 52 Atl. 322; *Harman v. Cundiff,* 82 Va. 239.)

It is clearly competent for a jury to find vindictive damages in an action of libel or slander. (Newell on Slander and Libel, 2d ed., pp. 842–846, and notes.)

Wherever such (exemplary) damages are recoverable at all for malicious wrongs, they may be recovered for libel and slander, especially so where words are actionable *per se.* (4 Sutherland on Damages, 4th ed., sec. 1216, and notes; 25 Cyc. 536.)

California, under statute similar to Idaho, has adopted the rule contended for. (*Childers v. San Jose Mercury Printing & Pub. Co.,* 105 Cal. 284, 45 Am. St. 40, 38 Pac. 903; *Lick v. Owen,* 47 Cal. 252; *Edwards v. San Jose Printing & Pub. Soc.,* 99 Cal. 431, 37 Am. St. 70, 34 Pac. 128.)

RICE, J.—This is an action for libel brought by the respondent William Dwyer against appellant W. A. Libert. The respondent, shortly prior to the time the action arose, was employed by the city of Lewiston in the capacity of patrolman. Certain charges were made by the appellant to the mayor and city council of the city of Lewiston, resulting

in the discharge of the respondent. Respondent's attorney thereupon appeared before the council and requested that body to request the appellant to file his charges in writing and to have a date set so that respondent might be there for the purpose of a hearing. The council reconsidered its action and requested appellant to file his charges in writing. Appellant thereupon had his charges prepared and filed with the city council, which writing contained the following matter alleged to be libelous, to wit:

"Complainant had several talks with William Dwyer during the few days following and on or about the 30th day of September, 1915, the said William Dwyer informed the complainant that Kittie Begle would be down on Saturday following, at which time the matter would be fixed up by securing the indebtedness with a mortgage, which said conversation was later confirmed by Mr. Dwyer in a conversation with Center Alexander, acting as the agent of Joseph Alexander. That at the time of making this statement to W. A. Libert and confirmation of same to Center Alexander the said William Dwyer was knowingly making false statements in, to wit: That on the 22d day of July, 1915, the said Kittie Begle had redeeded to Kittie Dwyer as her sole and separate property the real property in question, which deed had been held and was so held by said parties at the time of the conversation of September 25th, and was together with a homestead declaration of Kittie Dwyer placed of record in the office of the county recorder on the 28th day of September, 1915, and was so of record at the time the said William Dwyer was promising W. A. Libert to have the said Kittie Begle come down and secure the indebtedness with a mortgage on or about the 30th day of September. That the entire question of having the said Kittie Begle enter into the matter was held out by the said William Dwyer falsely, for the reason that on the 22d day of July, 1915, over two months before the 25th day of September, 1915, the said Kittie Begle had ceased to have any interest legal or otherwise to said property."

The complaint contained no colloquium or innuendo, and no special damages were claimed in the complaint.

It is urged that the complaint does not state a cause of action; that the written charge does not contain language which is libelous *per se,* and that the complaint contains no innuendo showing that on account of the circumstances the matter was libelous as against respondent.

Criminal libel is defined by sec. 6737, Rev. Codes, as follows: "A libel is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects, of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule." In the case of *State v. Sheridan,* 14 Ida. 222, 93 Pac. 656, 15 L. R. A., N. S., 497, it was noted that in determining whether particular words were actionable *per se,* the same rule does not apply to libel as to slander. In the case of *Farley v. Evening Chronicle Pub. Co.,* 113 Mo. App. 216, 87 S. W. 565, at p. 568, the supreme court of Missouri said: "But written or printed matter which is communicated to third parties stands on a different footing and is often actionable when it would not be if spoken. As intimated, if it is of a character conducive to blacken the reputation of the person referred to, or excite ridicule or wrath against him, or destroy public confidence in him, it is actionable without proof of special damage. The reason assigned for this legal difference between written and spoken language is that writing or printing injurious statements about a person implies a deliberate purpose to do harm, whereas detrimental words are often spoken thoughtlessly or in a passion. Weight is allowed, also, to the more enduring character and wider vogue of published statements. Odgers, Libel and Slander, 4th ed., p. 4." (See, also, Cooley on Torts, 3d ed., p. 399.)

We have no doubt that the written publication of the words alleged in the complaint is actionable *per se.* Truthfulness is one of the basic virtues, perhaps the most fundamental of all. To charge a man in a written publication with wilful falsehood in the matter of a serious business transaction must necessarily expose him to contempt, and have a

tendency to lower him in the common estimation of citizens. (*Riley v. Lee*, 88 Ky. 603, 21 Am. St. 358, 11 S. W. 713; 25 Cyc. 255; *Hatt v. Evening News Assn.*, 94 Mich. 114, 53 N. W. 952; *Lindley v. Horton*, 27 Conn. 58; *Paxton v. Woodward*, 31 Mont. 195, 107 Am. St. 416, 3 Ann. Cas. 546, 78 Pac. 215; *Monson v. Lathrop*, 96 Wis. 386, 65 Am. St. 54, 71 N. W. 596.)

Appellant next contends that there was no evidence of the falsity of the publication, but that, on the contrary, the proof of the truth of the publication was conclusive. The gist of the libel is contained in the statement that at the time of making the statement to appellant, and to one Alexander, that "Kittie Begle would be down on the Saturday following at which time the matter would be fixed up by securing the indebtedness with a mortgage," the respondent was knowingly making a false statement, in that at that time Kittie Begle had reconveyed the property to the wife of respondent, who had filed a homestead declaration upon the same, and therefore Kittie Begle would be entirely unable to give the mortgage security. The testimony of respondent was to the effect that appellant at the time of the conversation referred to was threatening to bring suit against Kittie Begle, and that respondent had told appellant that he need not send the summons to the town of Nez Perce to serve upon her and thus interfere with her duties, as she would be down to Lewiston on the following Saturday. Respondent denied that he stated to appellant, or Alexander, that she would give a mortgage as security. The wilful falsehood charged was in misleading appellant into believing that he would receive mortgage security for his indebtedness. On this matter the evidence was conflicting; and the determination of the fact was properly left to the jury.

It is next contended that the communication was privileged, for the reason that it was filed with a body that had the right to discharge a public officer. In a case of this kind the communication is qualifiedly privileged, and in order for one who makes such publication to claim the benefit of the

privilege, the statement must be made in good faith and in the absence of malice.

In the case of *Foster v. Scripps*, 39 Mich. 376, 33 Am. Rep. 403, we find the following: "But where a person occupies an office like that of a city or district physician, not elected by the public, but appointed by the council, and subject only to removal by the council, we have found no authority, and we think there is no reason, for holding any libel privileged except a *bona fide* representation made without malice to the proper authority, complaining on reasonable grounds." (*Bodwell v. Osgood*, 20 Mass. (3 Pick.) 379, 15 Am. Dec. 228; *Finley v. Steele*, 159 Mo. 299, 60 S. W. 108, 52 L. R. A. 852; *Howarth v. Barlow*, 113 App. Div. 510, 99 N. Y. Supp. 457.)

The question of the good faith of the publication and the absence of malice, under the evidence, was properly left for the jury to determine.

It is next contended that as respondent requested the mayor and city council to have appellant file his charges in writing, he thereby consented to the publication of the libelous matter, and is in no condition to complain.

If the only publication that can be proved is one made by the defendant in answer to an application from the plaintiff, or some agent of the plaintiff, demanding explanation, such answer, if fair and relevant, will be held privileged, for the plaintiff brought it upon himself; but a person cannot take advantage of an opportunity given by request of the plaintiff to gratify his malice. (*Laughlin v. Schnitzer* (Tex. Civ.), 106 S. W. 908.)

In the case of *Luzenberg v. O'Malley*, 116 La. 699, 41 So. 41, at p. 44, the following language is used: "It would seem to be too plain to allow of difference of opinion that, when plaintiff challenged defendant to name the 'reasons too numerous to mention' why he was unfit to be district attorney, or even to practice law, he did not request defendant to publish malicious falsehoods about him." (See, also, *Schultz v. Guldenstein*, 144 Mich. 636, 108 N. W. 96.)

In this case it cannot be said that plaintiff requested the publication for the purpose of bringing an action thereon,

or consented to the publication of a libel against himself by appellant. Appellant had made verbal charges against him to the proper authorities, upon which charges it seems respondent was dismissed. In order that he might have an opportunty to answer the charges, of which he may have been more or less ignorant, he reque ted that the appellant file the charges in writing in order that he might be heard thereon. It cannot be said that the respondent requested the appellant to publish libelous matter about him. The request amounts to this, that if appellant in good faith and without malice had any charges to make against him, he would like to have such charges made in writing.

The question of the good faith of the appellant in filing the charges, and as to whether he was actuated by malice, was, under instructions of the court, properly left to the jury, and its finding thereon will not be disturbed.

Appellant objected at the trial to the following question, which objection was overruled and exception saved: "Q. Mr. Dwyer, are you generally acquainted with the financial standing and responsibility of Mr. Libert, that is, whether or not he is a poor man or a wealthy man?" Appellant assigns the overruling of defendant's objection as error.

"In actions for libel the weight of authority is conceded to be in favor of the rule that the pecuniary circumstances of the defendant are admissible in favor of the plaintiff as tending to show the influence his words would have and the consequent extent of the injury." (25 Cyc. 508.)

In 2 Sutherland on Damages, 4th ed., p. 1315, that authority says: "In other cases it has been held, and the better doctrine from its intrinsic reasonableness is, that so far as the cause of action rests upon an injury to character or an insult to the person compensatory damages may be increased by proof of the wealth of the defendant. This is upon the ground that wealth is an element which goes to make up his rank and influence in society, and thereby renders the injury or insult resulting from his wrongful act the greater. But in such cases as it is rather the reputation for, than the possession of, wealth which is the cause of this increased rank,

the testimony should correspond and only the general question as to his circumstances can be asked, and not the details.''

In the instant case, the allegations of the complaint would justify the jury in bringing in a verdict, not only for compensatory damages but also for exemplary damages. The complaint alleges that the charges were false and malicious, and published by the defendant with the deliberate purpose and intention of injuring the defendant in his good name and reputation and causing his dismissal as said patrolman of said city of Lewiston, Idaho.

In the case of *Stark v. Epler,* 59 Or. 262, 117 Pac. 276, the court said: ''The rules of pleading do not require that the allegation relating to exemplary damages should be set out separately from the other averments of the complaint. Special damages must be grounded upon separate allegations, but exemplary damages are so intimately connected with general damages that if the general allegations are sufficient to show the wrong complained of was inflicted with malice or oppression or other like circumstances, the complaint will be sufficient to authorize the infliction of punitive or exemplary damages.'' (*Sullivan v. Oregon Ry. & Nav. Co.,* 12 Or. 392, 53 Am. Rep. 364, 7 Pac. 508; *San Francisco etc. Bldg. Soc. v. Leonard,* 17 Cal. App. 254, 119 Pac. 405; *Iaegar v. Metcalf,* 11 Ariz. 283, 94 Pac. 1094; *Martin v. Corscadden,* 34 Mont. 308, 86 Pac. 33.)

It is not necessary to the recovery of exemplary damages that they should be specially claimed in the complaint, but such damages may be recovered under a claim for damages generally. (*Harmening v. Howland,* 25 N. D. 38, 141 N. W. 131; *Shoemaker v. Sonju,* 15 N. D. 518, 11 Ann. Cas. 1173, 108 N. W. 42; *Nashville etc. Ry. v. Blackmon,* 7 Ala. App. 530, 61 So. 468; *Davis v. Seeley,* 91 Iowa, 583, 51 Am. St. 356, 60 N. W. 183.)

In 2 Sutherland on Damages, p. 1316, the author says: ''But when exemplary damages are claimed a different question is presented. The defendant's pecuniary ability is then a matter for the consideration of the jury, on the ground that a given sum would be a much greater punishment to a man of

small means than to one of larger.    For this purpose the reputed wealth of the defendant may be proven, subject to his right to controvert the plaintiff's evidence, and the proof may be directed to his wealth at the time of the trial.''

From the issues presented by the pleadings in this case, therefore, the question complained of was not objectionable. (*Binford v. Young,* 115 Ind. 174, 16 N. E. 142; *Marriott v. Williams,* 152 Cal. 705, 125 Am. St. 87, 93 Pac. 875; *Barkly v. Copeland,* 74 Cal. 1, 5 Am. St. 413, 15 Pac. 307.)

The other errors assigned by appellant we do not deem necessary to discuss.    The judgment is affirmed.    Costs awarded to respondent.

Morgan, J., concurs.

Budge, C. J., sat at the hearing but took no part in the decision.

Petition for rehearing denied.