**Jo Ann IVERSON, by her guardian ad litem, Carmel Iverson, Appellant,**

v.

**Arden FRANDSEN, Appellee.**

**No. 5385.**

United States Court of Appeals
Tenth Circuit.

Oct. 5, 1956.

Walter H. Anderson, Pocatello, Idaho (Ray S. McCarty, Salt Lake City, Utah, and Gus Carr Anderson, Pocatello, Idaho, on the brief), for appellant.

George D. Preston, Logan, Utah, for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, Jo Ann Iverson, by her mother and guardian ad litem, brought this action against the appellee, Frandsen, in the District Court of Utah, for certain allegedly libellous statements made in a psychological report on the mental level and capacity of the appellant. Federal jurisdiction is based upon requisite diversity of citizenship and amount in controversy.

At the close of the evidence, the trial court directed a verdict in favor of the appellee, from which the appellant appeals. The trial court concluded that the report was qualifiedly privileged without any proof of actual malice; and that requisite publication was lacking.

The appellant takes the position that the trial court usurped the prerogatives of the jury in that the testimony of the guardian ad litem presented a question of fact for the jury as to whether the appellee had gone beyond the bounds of his qualified privilege; and that the language used in the report and evidence of falsity presented a question of fact as to whether the critical words denoted express malice.

 Libel, as defined by the statutes of Idaho, is a malicious defamation, expressed either by writing, printing or by signs or pictures, to impeach the honesty, integrity, virtue or reputation; or publish the natural and alleged defects of one who is alive and thereby expose that person to public hatred, contempt or ridicule. § 18–4801, I.C. But generally recognized, public policy exempts certain libellous statements as absolutely privileged, and therefore not actionably defamatory. Absolutely privileged statements or communications are, however, confined to very narrow fields, such as judicial proceedings, statements of executive officers made in the discharge of their duties, and legislative proceedings. Jones v. Kennedy, 73 App.D.C. 292, 121 F. 2d 40; Glass v. Ickes, 73 App.D.C. 3, 117 F.2d 273, 132 A.L.R. 1328; Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L. Ed. 780. Then there are certain qualified or conditionally privileged communications which, when made in good faith, without malice, to a person having a corresponding interest or duty, are likewise nonactionable. 33 Am.Jur., Libel and Slander, § 126; White v. Nicholls, 3 How. 266, 11 L.Ed. 591; Swift & Co. v. Gray, 9 Cir., 101 F.2d 976. A qualifiedly privileged communication rebuts the presumption of malice which attaches to otherwise libellous matter, and it is incumbent upon the complaining party to show express malice from the language itself or by extrinsic evidence. National Disabled Soldiers' League v. Haan, 55 App.D.C. 243, 4 F.2d 436; Montgomery Ward & Co. v. Watson, 4 Cir., 55 F.2d 184; Interstate Transit Lines v. Crane, 10 Cir., 100 F.2d 857. Such is the law in Idaho where this action arose. Gough v. Tribune-Journal Co., 75 Idaho 502, 275 P.2d 663.

Since very early childhood, the appellant has admittedly suffered from claustrophobia—a fear of enclosed places. Early in September 1951, the guardian ad litem took her nine-year-old daughter, the appellant, to the State Hospital South, Blackfoot, Idaho, a state institution for the mentally ill, for assistance in overcoming this fear which prevented her child from attending public school. After a short discussion with Dr. Isabella Ralph, a staff psychiatrist, she was advised to return at a later date for a more thorough inquiry. At the subsequent meeting Dr. Ralph directed the mother and daughter to the appellee, Frandsen, an experienced psychologist employed part time at the hospital. It was standard institutional procedure to have all patients examined by psychologist-psychiatrist teams—the psychologist doing the testing and evaluating and the psychiatrist administering the treatment. As a part of his examination Frandsen gave the daughter a Stanford-Benet test—a universally recognized method for determining the intelligence quotient and mental capacity of an individual. He then forwarded to psychiatrist Ralph his report which stated in part that the intelligence quotient of the child classified

her as " 'feeble-minded', at the high-grade moron level of general mental ability." The report further stated that "at the time she is about sixteen, she should have progressed to about the fourth grade level in reading, arithmetic, writing, etc." These two statements are the basis for this libel action. Subsequently, on request of the appellant's school guidance director, and following the practice of the hospital, a copy of Frandsen's report was forwarded to the school officials. It was from this source that embarrassing rumors apparently emanated concerning the mental condition of the appellant. Upon contacting the local school authorities, the mother was shown Frandsen's report and another report made three years later by the school's guidance director which gave her daughter about the same I. Q. rating.

Without taking issue with any of the foregoing facts, the appellant rests her case squarely on the proposition that she went to Dr. Ralph for advice and treatment concerning claustrophobia; that the Stanford-Benet test was beyond the scope of the consultation, wholly unauthorized and therefore not qualifiedly privileged.

There was positive and uncontradicted proof to the effect that the Stanford-Benet test was standard procedure for all patients to ascertain whether such patients had the mental capacity to respond to psycho-therapy and, if so, at what level it must be based; that the report was prepared at the request of Dr. Ralph, in accordance with standard procedures and intended only for hospital officials or professionally interested persons; that Frandsen only saw the appellant on this one occasion; that the report was as accurate as Frandsen could make it; that Frandsen had never seen it since forwarding it to Dr. Ralph; and that he had never been consulted concerning the use of the report by any one other than the hospital officials to whom it was directed. The report was clearly within the duties of Frandsen as a staff psychologist of the state hospital and it contained matter which certainly was of professional interest both to the appellee and Dr. Ralph.

The report is said to be absolutely privileged under the rationale of Glass v. Ickes, supra. But, we have seen no Idaho decisions indicating a disposition to extend the doctrine of absolute privilege to communications of this kind. See Dwyer v. Libert, 30 Idaho 576, 167 P. 651, 652, citing Foster v. Scripps, 39 Mich. 376, 33 Am.Rep. 403, which denied privilege to the communications of an appointed physician in public service " 'except a bona fide representation made without malice to the proper authority' ". In the view we take of this case, however, it is unnecessary for us to delineate the field of absolute privilege in Idaho. For, we are convinced that the assailed report, though qualifiedly privileged, was positively free from any actionable malice whatsoever. In the first place, it was incumbent upon the appellant to offer some evidence of an extrinsic character to show actual malice on the part of the appellee. The appellant admittedly consulted a psychiatrist at a public institution for the purpose of receiving psychiatric therapy. And, it is also true that, as a part of the contemplated treatment, she voluntarily submitted herself to an examination by a duly recognized psychologist, and having done so, she cannot prescribe the diagnostic procedure incident to such treatment. To be sure, she is not libeled by the contents of the report. It was a professional report made by a public servant in good faith, representing his best judgment, and therefore could not be maliciously false.

The judgment is affirmed.