CURTISS–WRIGHT CORPORATION v.
MITCHELL.
No. 296.

District Court, E. D. Virginia,
Alexandria Division.

Jan. 23, 1935.

Gardner L. Boothe, of Alexandria, Va., Henry G. Hotchkiss, of Washington, D. C., and Cyril Hyde Condon, of New York City, for plaintiff.

Seth W. Richardson, Leo P. Harlow, Marshall H. Lynn, Joseph E. Davies, Raymond N. Beebe, and Adrien F. Busick, all of Washington, D. C., for defendant.

WAY, District Judge.

The declaration in this case alleges, among other things, that the defendant on or about the 3d day of March, 1934, published both orally and in writing the following statements of and concerning the plaintiff:

. "(b) The Curtiss-Wright Corporation, New York, N. Y., which comprises the following:

"1. Curtiss Aeroplane and Motor Co., Buffalo, N. Y., airplanes and war planes.

"2. Keystone Aircraft Corporation, Bristol, Pa., airplanes and war planes.

"3. Curtiss-Wright Airplane Co., St. Louis, Mo., airplanes.

"4. Wright Aeronautical Corp., Paterson, N. J., Curtiss D.12 (450–500 rated h. p. water-cooled) and 'Conqueror', Prestone-cooled airplane and war plane engines, and Wright 'Cyclone' and 'Whirlwind' air-cooled radical airplane and war plane engines.

"5. Curtiss-Wright Flying Service, flying service.

"6. Curtiss-Wright Export Corp., New York, N. Y.

"7. Canadian Wright, Ltd., Montreal, Canada.

"This group of firms constitutes another aircraft trust in the United States, and it is about the size of the United Aircraft and Transport Corporation already referred to. The Curtiss-Wright Corp. is likewise not free to make its own decisions on aviation matters. Possibly, all its technical and other material also becomes quickly known to foreign countries. In the background the Chase National Bank and the Rockefeller financial interests are concerned with the Curtiss-Wright Corp. The Bank of the Manhattan Co., the City Bank Farmers Trust Co., the Central Hanover Bank & Trust Co., and the Marine Bank of Buffalo,

N. Y., appear more prominently as this corporation's bankers.

"The Curtiss-Wright Corporation and the United Aircraft and Transport Corporation between them control the aviation industry of the United States. Their pattern is the same and they present an united front to any third party, including the government of the United States. They monopolize the manufacture of airplane and war plane engines in this country. It is the case with both of them, that the last word, on whether or not they shall adopt any aviation improvement or invention, lies not with their technical executives, but with their outside, unqualified financier masters. These groups maintain a pool of patents that discourages the offer and adoption of any aviation improvement or invention from without, and deprives their own personnel of real incentive to make any such improvement or invention. Neither of the groups has been responsible for the introduction or adoption of any actual improvement in aircraft or aircraft engines.

"They have been and are being caused by the purely financial powers behind them to adhere to the false manufacturing policy in competitive market of maximum reproduction with minimum improvement. Although the Trust builders and stock manipulators of these combines have prevented competition in the design and production of aircraft and aircraft engines in the United States, they have been, naturally, unable to slow down that of foreign countries and so their progress has made United States air defense a negligible factor in the world today. * * *

"The effect of this substantially was again to turn over our air development to the aeronautical racketeers. * * *

"Thereupon the Army Air Corps, which was not properly equipped for any kind of duty, due to the machinations of these aviation profiteers, and to service politicians, undertook to carry the mail under conditions which these very people who are putting up such a great hue and cry, through their controlled press, could not have done."

The defendant demurred to the declaration upon the grounds, among others:

1. That the matters and things set up in said declaration do not constitute matter which is libelous or slanderous per se;

2. That the declaration shows on its face that the damages sought to be recovered by the plaintiff in this cause are not damages sustained by it, but damages sustained, if at all, by separate and distinct corporate entities.

3. That the declaration shows on its face that the language alleged in paragraphs 4 and 5 (first count) of said declaration to have been used by this defendant was used of and concerning a class and is not actionable by any individual member thereof.

4. The declaration shows on its face that the language alleged in paragraphs 9 and 10 (second count) of said declaration to have been used by this defendant was used of and concerning a class and is not actionable by any individual member thereof.

Briefly stated, each count of the declaration, after setting forth the statements alleged to have been made and published by the defendant on the occasion in question, further alleges that these statements were "wholly false and untrue and were uttered by the defendant with the deliberate intent and purpose of injuring the reputation, business and credit of the plaintiff, and with the deliberate intent and purpose of destroying the confidence and trust of the public at large in the honesty and integrity of the relationships, transactions and business dealings of the plaintiff in general and with the United States Army Air Corps and the United States Navy in particular."

Assuming, as the court must on a demurrer to the declaration, that these utterances were made and published with the intent and purpose that the declaration charges, the question arises whether or not they constitute such a slander and libel against the plaintiff corporation as avoids the necessity of plaintiff's alleging and proving special damages. After mature consideration, it seems to me that these charges alleged to have been made by the defendant, if untrue, do so reflect on the management of the plaintiff corporation and on its methods of conducting its affairs as to constitute slander and libel actionable per se.

In Newell on Slander and Libel (3d Ed. 1914) pp. 435, 436, the rule with respect to corporations is stated as follows:

"Sec. 309. Corporations.

"(1) *As plaintiffs:* A corporation may sue for any libel upon it as distinct from a libel upon its individual members. It may also sue for slander *upon it in the way of its business or trade.*

"In the English case of South Hetton Coal Co. v. North Eastern News Ass'n [(1894) 1 Q. B. 133], Lord Esher, M. R.,

stated that the law of libel is the same as to all plaintiffs, and that whether there was a libel or not depends on the same question, namely, whether the jury are of opinion that *what has been published with regard to the plaintiff would tend in minds of ordinary sense to bring plaintiff into contempt, hatred or ridicule,* or to injure his character, the question being the same whether the action be brought by a person, a firm or a company; that though a corporation may not sue for a libel in respect of anything reflecting upon the members thereof personally, yet they may sue for *a libel reflecting on the management of their trade or business* without alleging or proving special damage; that the *words complained of* must attack the corporation in the *method of conducting its affairs,* must accuse it of fraud or mismanagement, *or* must attack its financial position. If, however, the corporation be not engaged in any business, it would probably be necessary to prove special damage in any case of slander, and this would be difficult." (Italics supplied.)

It is worthy of note that this author in his Fourth Edition, 1924, pp. 343, 344, restates the rule without any change whatever in the language above quoted.

In Maytag Co. v. Meadows Mfg. Co. (C. C. A.) 45 F.(2d) 299, at page 302, it is said:

"The authorities fully sustain the conclusion that where a libel contains *an imputation upon a corporation in respect to its business,* its ability to do business, *and its methods of doing business,* the same becomes libelous per se, and that special damages need not be alleged. The management and credit of a corporation and its solvency are all most carefully guarded by the law, and imputations against the same, imputing lack of credit, insolvency, or pecuniary difficulties are rightfully deemed of such injurious character as to be actionable per se without allegation of special damage. The legal principles constituting the law of libel and slander are the same whether corporations or individuals are involved. See National Refining Co. v. Benzo Gas Motor Fuel Co. (C. C. A.) 20 F.(2d) 763, 55 A. L. R. 406; Vitagraph Co. v. Ford (D. C.) 241 F. 681; Newell on Slander and Libel (4th Ed. 1924) p. 184; Bee Publishing Co. v. World Pub. Co., 59 Neb. 713, 82 N. W. 28; International Text-Book Co. v. Leader Printing Co. (C. C.) 189 F. 86, and Union

Refrigerator Transit Co. v. McClure Co. (C. C.) 146 F. 623." (Italics supplied.)

Reference is also made to the opinion by Judge Mayer in Vitagraph Co. of America v. Ford (D. C.) 241 F. 681, at page 686: "Finally, it may be pointed out that there is never any difficulty in freely, fully, and vigorously discussing public affairs by fair criticism and comment; but, when men have invested large sums of money in enterprises, and are endeavoring to conduct these enterprises by honest methods and along honest lines, they are entitled to the protection of their property against the serious consequences of defamation, even though their enterprises are carried on under corporate forms. The courts will not be astute to discover fine distinctions in words, nor scholastic differentiations in phrases, so long as they are sufficiently in touch with affairs to understand the meaning which the man on the street attributes to ordinary everyday English."

To repeat, the view of the court is that the statements which are set forth in the declaration, and alleged to be false, reflect upon the management of the plaintiff corporation and its method of conducting its affairs to such an extent, as per se, to give rise to an action without the necessity of alleging and proving special damage.

With respect to the contention that the damages sought to be recovered, if sustained at all, were not sustained by the plaintiff corporation, but by separate and distinct corporate entities: It does not seem to the court that this contention is sustained by the language attributed to the defendant. The language attributed to him clearly holds the plaintiff corporation responsible for the acts and conduct which were the subject of defendant's statements, without regard to whether those acts were actually committed by plaintiff or the separate corporate entities referred to. I refer particularly to pages 3 and 6 of the declaration where the article complained of is quoted at length. A fair construction of that language is that the defendant makes the charges against the "Curtiss-Wright Corporation," the plaintiff. For example, the article opens with the following: "The Curtiss-Wright Corporation, New York, N. Y., which comprises the following," and then, after naming various corporations, the remainder of the article, so far as material to this decision, ignores those corporations and makes direct and explicit reference to the Curtiss-

Wright Corporation and by its language, fairly construed, holds the plaintiff corporation responsible for all of the acts to which the defendant took exception in the address.

 While the language in the article complained of was in a sense used of and concerning a class, the class is really limited to two corporations, namely, the United Aircraft & Transport Corporation and plaintiff corporation, and the article definitely and pointedly makes the charges complained of against the plaintiff corporation.

Under the circumstances, the court has reached the conclusion that the case presented by the declaration is not one that should be decided and disposed of on demurrer, but that the plaintiff is entitled to have the case alleged heard on the merits.

Upon presentation, an order overruling the demurrer will be entered.