24 N.J. Super. 73 (1952)
93 A.2d 651
RALPH W. CHANDLESS, ERNEST WELLER, JULIUS E. KRAMER, JOHN FRANK, JR. AND DOMINICK FONDO, PLAINTIFFS,
v.
JOHN BORG, DONALD G. BORG, ROSSMAN H. WYNKOOP, ARTHUR A. KRON AND BERGEN EVENING RECORD CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 18, 1952.
*75 Mr. George F. Losche, attorney for plaintiffs.
Mr. Ralph W. Chandless, pro se.
Mr. Harry Green, attorney for defendant Arthur A. Kron.
Messrs Winne & Banta, attorneys for other defendants.
WILLIAM A. SMITH, J.S.C. (specially assigned).
This is a civil action based on 14 counts, the first 13 of which seek to recover damages for alleged libels, and the 14th count charges a conspiracy primarily based on the alleged libels, claiming that the defendants conspired to injure the plaintiffs through libelous publications.
The articles charged libelous are based on publications in the Bergen Evening Record, a newspaper published in Hackensack, New Jersey, and these publications were occasioned by the Republican primary campaign in Bergen County in the Spring of 1951.
*76 The parties plaintiff are lawyers who are engaged in a partnership practice and all or most of them were particularly interested in the support of certain candidates in the Republican primary referred to, and the defendant newspaper was supporting certain opposing candidates in said primaries. The plaintiff, Ralph W. Chandless, is a former state senator and has held other political offices, and is attorney for certain municipalities in Bergen County. Ernest Weller was the city attorney of Hackensack. Julius E. Kramer was Republican candidate for the Assembly on the ticket supported by Mr. Chandless. John Frank, Jr. was a candidate for mayor of Garfield on the "Anti-Organization Ticket." Dominick Fondo was assistant city attorney of Hackensack, city prosecutor and counsel of the city parking authority.
The defendants are the Bergen Evening Record Corporation, whose business is the publication of the Bergen Evening Record, John Borg, the chairman of the board of directors of the corporation, Donald G. Borg, the editor of the newspaper, Rossman H. Wynkoop, the managing editor of the paper, and one, Arthur A. Kron, not officially connected with the paper, and who was the campaign manager of the candidates supported by the Bergen Evening Record. Mr. Kron is mentioned only in the 14th count of the complaint and he is there charged as being engaged in the conspiracy charged.
The alleged libelous publications are contained in one article of the paper's publication of March 16, 1951, two articles of the publication of March 26, 1951, and one article of the publication of March 29, 1951. None of the quotations from the articles charged as libelous quotes the entire article in any count, but the plaintiffs quote portions of the articles and charge these as libelous, charging in various counts that the words were used in a defamatory sense, intending falsely and maliciously to convey, and that they did convey, that the plaintiffs were and had been guilty of various improprieties, such as unprofessional practice of *77 their profession, harmful and improper influence in the government and courts of the county, and commission of criminal offenses. The relief asked for on the argument of this motion, which was on behalf of all of the defendants, was to strike each and every count of the complaint on the ground that they failed to state a claim upon which the plaintiffs are entitled to relief, and for summary judgment (Rules 3:12-2 and 3:56), and for failure to comply with the rules of this court (Rule 3:41-2). The defendants also ask, if the complaint is not stricken, that the plaintiffs be required to consolidate the counts which refer to the same publication, so that the publication should be considered as one libel and not separated into various libels, and that each of the plaintiffs be required to separate his respective claims into separate counts.
All of the defendants except Arthur A. Kron are referred to in the first 13 counts charging libel, and the court will not consider Mr. Kron as a party to these 13 counts. Kron, as has been stated, is a party to the 14th count, but the Bergen Evening Record Corporation, owner of the publication, is not a party to the 14th count.
In considering the articles published, it is important to consider what occasioned the publication of the articles challenged in the complaint. At the time of the publications there was a political campaign on for the nomination in the Republican primaries for candidates for public office in Bergen County, and the plaintiff Chandless was interested in the campaign for the nomination of the so-called "Anti-Organization Ticket." His partners were politically interested, as has been stated, and the newspaper was supporting the "Organization Ticket."
The first count is directed at an article published in the issue of March 16, 1951, entitled Candidate's Law Firm Handles Bookie Charges, and sets forth two paragraphs, not consecutive, which read as follows:
"Surrender of the fifth of seven men indicted Tuesday in connection with a large-scale telephone bookie operation here focused attention *78 on the fact that so far a majority of the indicted seven have been represented by a law firm which includes a candidate for Assembly on the insurgent Republican `Clean House in Bergen' ticket.
"Vasile was represented by John Frank, member of the law firm of Chandless, Weller, Kramer and Frank. Also a member of the firm is Julius Kramer, candidate for Assembly on the Republican insurgent ticket. Another member of the firm is Dominick Fondo, Hackensack City Prosecutor and brother of Anthony Fondo, Republican City boss and controller with Ridgewood publisher Bennett Fishler of the insurgent slate."
This count recites that the plaintiffs were actively engaged in the practice of law under the firm name of Chandless, Weller, Kramer and Frank, and claims they were damaged in their profession, and that former associates in business and society of the plaintiffs and each of them have refused and still refuse to have any transactions or discourse with the plaintiffs. The count further alleges that the words were used in a defamatory sense in that the defendants intended falsely and maliciously to convey, and did convey, that the plaintiffs "were and had been guilty of unprofessional practice of their profession as lawyers."
No special damage is alleged. Special damages would have to be alleged in the event that recovery was sought by the partnership for compensatory damages. No such claim has been made. The court, on the argument, raised the question that, as there was no special damage alleged, if the partnership was going to seek damages as such, they would have to separate their claims in a separate count for the purpose of alleging special damage to the partnership, and to the court's inquiry Mr. Chandless, who argued the motion, said, "I don't see any need for it," and the court ruled that the question of amendment was settled.
The title of the action does not set forth a suit as a partnership and, as has been stated, this count does not allege a claim for damages on account of losses to the partnership, and the court will treat the charges of the counts, where based upon the claims made by the plaintiffs, together in any one count as claims not being alleged on behalf of *79 the partnership. This consideration will also apply to the other counts in which the plaintiffs are joined.
The second count is by all of the plaintiffs and is based on an article published in the issue of March 26, 1951, entitled It's Chandless Plot, Says Regular G.O.P., with sub-title Wants to Grab Control of County, Charges Kron. This article consists of 18 paragraphs, running from page 1 to page 2, but the only paragraphs referred to in the count are the 3rd, 4th, 5th, 6th, 7th and 8th, which are set forth in the complaint as follows:
"From the day that Mr. Chandless was expelled from the New Jersey Senate for his part in the Lodi Township sewer scandal he has made repeated unsuccessful attempts to get back into power in the Republican party through the back door. This time he has conceived a clever, but bold scheme to seize control of the Republican Party and our County government. The evidence of his reappearance in politics is established by these facts:
1. Julius Kramer, a law partner of Mr. Chandless, is a candidate for Assembly on the anti-Organization ticket.
2. Anthony Fondo, Hackensack's ruthless political boss and faithful Chandless lieutenant, helped to pick the candidates on the anti-Organization ticket and has publicly endorsed all of them.
3. Dominick Fondo, brother of the Hackensack boss, is associated with Mr. Chandless's law office and is heading up the Hackensack machine in support of the anti-Organization ticket.
4. Malcolm Mercer, candidate on the Chandless ticket, is attorney for the Hackensack City Parking Authority, a job created for him by Boss Fondo.
5. John Frank, another of Mr. Chandless's law partners, is a candidate for Mayor of Garfield on the Chandless anti-Organization ticket."
This count charges that the publication was intended falsely and maliciously to convey, and did convey, the understanding that the plaintiffs were and would be a harmful and improper influence in the government and courts of the county in which they, as practicing attorneys, were and would be engaged in their practice.
The 3rd count is brought by all of the plaintiffs and is based upon an article published in the issue of March 29, 1951, under the heading Chandless Denies Picking Insurgent G.O.P. Ticket, and is part of an article appearing on the *80 first page of said publication and carried over to the fifth page of said publication, and consisting of approximately two columns. It, in part, publishes a statement made by Mr. Chandless in the form of a letter to Mr. John Borg of the Bergen Evening Record in reply to an editorial in that paper under date of March 26, 1951, and closes with this statement:
"I shall expect you to publish this letter in full with equivalent prominence in your next issue."
This count then quotes as the basis of the libel charged the second paragraph of the article, which reads as follows:
"Mr. Chandless's law firm includes Ernest Weller, Hackensack City Attorney; Julius E. Kramer, Republican candidate for Assembly on the Fishler-Fondo-Chandless ticket; and Dominick Fondo, Assistant City Attorney, City Prosecutor, counsel to the City Parking Authority, and brother of Anthony Fondo, who is a longtime Chandless associate and political boss of Hackensack."
It might be noted here that the 4th, 5th and 6th counts repeat this paragraph as being part of the publication charged as libelous in those counts. The second paragraph charged as libelous is a quotation of a part of one paragraph on the second page of the publication, which is set up by the editor as a statement of fact in publishing the letter, the quotation in the third count being as follows:
"The fact: The scandal arose from Mr. Chandless's using his official position to obtain a $200,000 State deposit for a $92,000 bank and thus enable disposition of otherwise unsalable sewer bonds, for which he admitted receiving $10,000 of an $11,800 `fee' paid in cash and collected from Lodi Township as fraudulent damage claims by the contractors."
The 3rd count then charges that the defendants intended falsely and maliciously to convey, and did convey, that the plaintiffs were and had been guilty of unprofessional practice of their profession as lawyers. This charge is repeated in the 4th, 5th and 6th counts.
*81 The 4th, 5th and 6th counts, in addition to repeating the first paragraph of the alleged libel as charged in the 3rd count, repeat separate following quotations made by the editor and interspersed in the published statements of fact, the allegation in the 4th count being as follows:
"The fact: Lodi Township was bankrupted by Mr. Chandless's scheme to build a $220,000 sewer in a town with less than $500,000 ratables."
The 5th count is the same except that the fact quoted is as follows:
"The fact: Judge McCarthy, Chandless stooge and suborner of perjury, was denied reappointment. Judge Mattocks, also a Chandless puppet, resigned under fire."
The 6th count is the same except that the fact quoted is as follows:
"The fact: Grand and petit juries were selected by Martin J. Toolan, Chandless Republican appointed as a Democrat and in 1930 charged with that crime, together with the sheriff, who during the sewer scandal was Harold V. Reilly, then a Chandless lieutenant."
Counts 7 to 13, inclusive, are brought by Mr. Chandless only against all of the defendants except Kron, and have to do with an article contained in the Bergen Evening Record of March 26, 1951, which article is different from an article in the same publication, referred to in previous counts. This article is an editorial entitled Permanently Self-Disqualified, and is on the last page of the publication of March 26, 1951. Each of these counts starts with a quotation from the beginning of the 4th paragraph of the published article and then quotes excerpts from the publication, each count quoting separate excerpts and alleging that the article imputes and charges the plaintiff Chandless with commission of criminal offenses involving moral turpitude.
*82 The quotation in the 7th count is as follows:
"Independent voters in the County are being shrilly asked to vote in the Republican primary election for some candidates sponsored by * * * the Prohibition-era Republican boss Ralph W. Chandless * * * they might find useful a reminder as to Mr. Chandless. * * * (he was) as a precocious young man, trained in the late hungry Billy Burke's Garfield conservatory of politics."
Plaintiff claims that the article was intended to convey the imputation and charge of the commission of criminal offenses involving moral turpitude "in conjunction with William A. Burke, a former Mayor of the City of Garfield."
The quotation in the 8th count is as follows:
"Independent voters in the County are being shrilly asked to vote in the Republican primary election for some candidates sponsored by * * * the Prohibition-era Republican boss Ralph W. Chandless. * * * But let independent voters consider carefully, before deciding whether any old change will do, what Senator Kefauver would have found in Bergen County during Ralph's roughshod rule.
He'd have found houses of ill fame running openly."
The crime alleged to be imputed is "the aiding or abetting of the keeping of houses of ill fame and the unlawful protection of the operation of the houses of ill fame."
The quotation in the 9th count is as follows:
"Independent voters in the County are being shrilly asked to vote in the Republican primary election for some candidates sponsored by * * * the Prohibition-era Republican boss Ralph W. Chandless. * * * But let independent voters consider carefully, before deciding whether any old change will do, what Senator Kefauver would have found in Bergen County during Ralph's roughshod rule.
He'd have found government contracts rigged and the Sheriff's Office used as the smoked-filled room in which the parties to nominal bidding on public works decided who's get the inflated contract this time."
The crime alleged to be imputed is "the aiding and abetting of fraudulent bidding on public work and the unlawful protection of persons engaged in frauds in connection with public contracts."
*83 The quotation in the 10th count is as follows:
"Independent voters in the County are being shrilly asked to vote in the Republican primary election for some candidates sponsored by * * * the Prohibition-era Republican Boss Ralph W. Chandless. * * * But let independent voters consider carefully, before deciding whether any old change will do, what Senator Kefauver would have found in Bergen County during Ralph's roughshod rule.
He'd have found gangsters shooting it out in ginmills under the eyes of drunken policemen; day after day he'd have found corpses stiffening on garbage dumps or in suburban yards, innocents shot in the street by dueling mobsters."
The crime alleged to be imputed is "the aiding and abetting in the commission of high misdemeanors, misdemeanor or the concealment, protection and compounding of the same."
The quotation in the 11th count is as follows:
"Independent voters in the County are being shrilly asked to vote in the Republican primary election for some candidates sponsored by * * * the Prohibition-era Republican Boss Ralph W. Chandless. * * * But let independent voters consider carefully, before deciding whether any old change will do, what Senator Kefauver would have found in Bergen County during Ralph's roughshod rule.
He'd have found * * * towns going bankrupt while their officials prospered."
The crime alleged to be imputed is "the aiding and abetting in the commission of embezzlement of public funds or the concealment, protection and compounding of such high misdemeanors."
The quotation in the 12th count is as follows:
"Independent voters in the County are being shrilly asked to vote in the Republican Primary election for some candidates sponsored by * * * the Prohibition-era Republican boss Ralph W. Chandless. * * * But let independent voters consider carefully, before deciding whether any old change will do, what Senator Kefauver would have found in Bergen County during Ralph's roughshod rule.
He'd have found judges corrupt."
*84 The crime alleged to be imputed is "the aiding and abetting and the concealment, protection and compounding of the bribery of judges."
The quotation in the 13th count is as follows:
"Independent voters in the County are being shrilly asked to vote in the Republican primary election for some candidates sponsored by * * * the Prohibition-era Republican boss Ralph W. Chandless. * * * But let independent voters consider carefully, before deciding whether any old change will do, what Senator Kefauver would have found in Bergen County during Ralph's roughshod rule.
He'd have found * * * both grand and petit juries made a political tool."
The crime alleged to be imputed is "the aiding and abetting in embracery and the concealment, protection and compounding thereof."
The 14th count, which is the remaining count, and which is one brought by all of the plaintiffs, charges that certain individuals, mentioning them, became candidates for the Republican nomination for public office in Bergen County, running on a ticket known as the "Organization Ticket," and subsequently thereto the defendant Arthur A. Kron was named and accepted the position of campaign manager of and for said candidates (inadvertently referred to in the pleading as "said defendant candidates"), and charges a conspiracy entered into by the defendant Arthur A. Kron, campaign manager of the "Organization Ticket," by entering into an unlawful scheme or agreement with the defendants, John Borg, Donald G. Borg and Rossman H. Wynkoop, having for its object a program of publicity and advertising comprising the public vilification and defamation of the plaintiffs and then, in the 4th paragraph of the count, the following is set forth:
"4. The matters and things alleged in the first 13 counts of the complaint herein and, in addition, divers other publication, advertising and publicity occurred, took place and were done by defendants pursuant to and in carrying out said illegal agreement and conspiracy."
*85 A number of legal grounds are urged as a basis of dismissal of the respective counts. These grounds and the principles involved will be considered and applied to the respective counts.
The publications claimed to be libelous were made in a newspaper and the defendants claim that the publications involve matters of public concern and, being so, they should be interpreted in the light of fair and bona fide comment and criticism upon matters of public concern, and the words should be construed according to their fair and natural meaning which would be given to them by reasonable persons or ordinary intelligence.
For authority on construing publications alleged to be libelous in the light of fair and bona fide comment, I refer to the opinion of Judge Eastwood in the most recent case dealing with this and, for the sake of brevity, his remarks and citations will be relied upon. Dressler v. Mayer, 22 N.J. Super. 129, 91 A.2d 650, at page 653 (App. Div. 1952), decided October 20, 1952.
It is contended that none of the counts of the complaint is based on a claim of recovery by the law firm of the plaintiffs for damages suffered by the firm for a libel affecting the firm. In the first place, the members are not stated in the title as suing as members of the firm. They are named only as individuals. They are referred to in the body of the counts where all of the plaintiffs are joined, but the paragraph merely states that they are members of the firm referred to, and none of the counts sets up a claim for special damages suffered by the partnership. For damages to be recovered by a partnership, special damages must be set up. Newell, Slander and Libel (4th ed.), p. 342, and see sec. 324, p. 360, and cases cited. Ryerson v. Marseillis, 16 N.J.L. 450 (Sup. Ct. 1838). The depositions that were taken in this case and which are relied upon on the motion indicate that the plaintiffs have no proof that the plaintiffs' firm ever suffered any special damages. Depositions, pp. 79 to 82 and 174-176. I previously referred to *86 the fact that the plaintiff Chandless, on the argument of this motion now under consideration, stated that he did not consider it necessary to allege any special damages, and this court, on the argument, stated that the court would rely upon this statement with regard to the plaintiffs' claim and consider that there were no special damages incurred. To recover on behalf of a partnership for damages suffered by the partnership by reason of libel, the complaint must set up under a separate count the claim of the partnership and specify the special damages suffered, thus separating the partnership claim from any individual damages to the individuals, caused by the publication. The court, on this motion to dismiss, will therefore treat the complaint in this case as not asserting a cause of action on behalf of the plaintiffs as partners.
The grounds urged for the dismissal of the complaint are threefold:
Misjoinder of plaintiffs;
Setting up separate charges of libels contained in the same publication;
That the alleged libelous publications are true and are not libelous.
Applying these legal principles to the causes of action set up in the complaint leads to a dismissal of the complaint, and I will indicate the application of these principles to the various counts of the complaint.
The joining of individual plaintiffs in a count to recover damages for defamation cannot be maintained, as separate individual damages must be proved and awarded. One party may suffer more than another, especially if punitive damages are awarded, as one defendant might be charged with greater damages than another. No authority is necessary to support this contention. To dispute it one might as well contend that two persons physically injured by the same tortious act could sue to recover for their respective injuries in the same count. The contention that separate recoveries must be had is supported by authority. 33 Am. Jur., sec. 230. Counts 1, 2, 3, 4, 5 and 6 violate this principle, *87 as all five plaintiffs are joined in each count, and must therefore be dismissed on this ground.
The plaintiffs may not divide a published article into separate charges of libel and allege them in separate counts. The mere printing of an article is not the basis of libel. It is the publishing that gives rise to the cause of action and the article, when published, must be interpreted by the material parts of the whole statement. As has been indicated, this has been done in all of the counts excepting the 1st and 14th and, therefore, these counts must likewise be dismissed for the reason stated.
The remaining ground relied upon is that the statements claimed as libelous are true and that they are not libelous. The legal principle that truth is a good defense to a claim asserting damages for a claimed libelous publication needs no reference for authority to support it except the statute. N.J.S. 2A:43-2, formerly R.S. 2:59-2 (N.J.S.A.). Under these contentions, it is urged that the first count is not untrue as to material statements. The plaintiff Frank has testified in the depositions with regard to the statements in the article referred to in the first count. He substantiates the claim made in the article that a majority of the seven men referred to as being indicted in the article of March 16, 1951, were represented by members of the Chandless firm, and he states that Vasile, the one referred to as being represented by Frank, was actually represented by him. It is also true that the plaintiff Kramer was a candidate for the Assembly on the Republican insurgent ticket, also referred to as the "Clean House in Bergen" ticket. It is also true that plaintiff Dominick Fondo was Hackensack city prosecutor and a brother of Anthony Fondo. The balance of the statement refers to Anthony Fondo, "Republican City boss and controller with Ridgewood publisher Bennett Fishler of the insurgent slate." The latter statement, true or not, is not libelous.
The purpose of the article is to call attention to the fact that various persons charged with crime were represented *88 by members of the firm which was composed of the plaintiffs. The article is not libelous as to the individual members of the firm. If the claim is that special damages have been suffered by the firm, they are not recoverable in this action, as has been previously stated. This action is not one brought by the firm. The article coming from a newspaper, and considering the plaintiffs' interest in the primary election, it seems to me that the defendants were justified under the principle of fair comment in publishing the article. The first count will therefore be dismissed as to all of the plain-statement, true or not, is not libelous.
As to the second count, the article in question is directed at Chandless and charges that he plans to seize control of the Republican party and the county government, and as evidence of it, refers to three of his partners, all parties plaintiff. The reference, in so far as it refers to Mr. Kramer, is true. As far as it refers to Dominick Fondo, it reads:
"Dominick Fondo, brother of the Hackensack boss, is associated with Mr. Chandless's law office and is heading up the Hackensack machine in support of the anti-Organization ticket."
The only part of the statement that the plaintiff Dominick Fondo takes issue with as to truthfulness, is the reference that his brother Anthony is "Hackensack" political "boss." Plaintiff Fondo in his deposition admits his brother is one of the political leaders of the Republican regime in Hackensack. Depositions, p. 284. The brother is also sergeant-at-arms of the district court. Depositions, p. 286. Anthony Fondo admits that some call him leader and that he does not recognize anyone else as leader. Depositions, p. 2. Certainly this statement may be considered as one of fair comment and not a libelous one. As to the plaintiff, John Frank, Jr., the statement reads:
"John Frank, another of Mr. Chandless's law partners, is a candidate for Mayor of Garfield on the Chandless anti-Organization ticket."
*89 This statement is true. As to the 3rd, 4th, 5th and 6th counts, referring to the article of March 29, 1951, entitled Chandless Denies Picking Insurgent G.O.P. Ticket, the references in the first paragraph of the allegedly libelous statement are to the plaintiffs Weller, Kramer and Fondo, and the paragraph does not refer to the plaintiff Frank. The statements therein contained are all true with the exception that the reference to Mr. Fondo speaks of him as counsel for the city parking authority. This is an evident mistake but it is not material, as Fondo is counsel for the city housing authority. The latter part of the statement refers to the fact that the plaintiff Fondo is a brother of Anthony Fondo, and reads:
"who is a longtime Chandless associate and political boss of Hackensack."
Clearly, this statement, in so far as it refers to the plaintiffs Weller, Kramer and Fondo, is not libelous as to them in any material particular. The statement is directed at Chandless, as is shown in the second paragraph of the statement which has no reference to his partners. This statement is not libelous as to the plaintiffs Weller, Kramer and Fondo for the reasons I have stated, and is certainly not a libel against the plaintiff John Frank, Jr., as he is not mentioned in the article. The 3rd count will therefore be dismissed as to the plaintiffs Weller, Kramer, Frank and Fondo.
What has been stated in the article quoted in the 3rd count as to the plaintiffs Weller, Kramer and Fondo, is also quoted in the 4th, 5th and 6th counts, and what has been stated with reference to the article's not being libelous as against the plaintiffs Weller, Kramer and Fondo, is equally applicable to these counts and therefore they will likewise be dismissed.
This disposes of the case in so far as the plaintiffs Kramer, Weller, Frank and Fondo are concerned, with the exception of the 14th count charging conspiracy. It is not a final disposition, however, as to the 2nd to 13th counts, inclusive, *90 and as to these counts, they will be dismissed as to the plaintiff Chandless, but with leave to present an amended complaint separated into separate counts as to each article, alleging the material portions of the article. This would permit the plaintiff Chandless to set up in one count a claim for libel under the article entitled It's Chandless Plot, Says Regular G.O.P., published on March 26, 1951, and also in another count to set up as libelous an article published on the same date, but in a distinctly different article, on the editorial page, entitled Permanently Self-Disqualified, and a third count charging as libelous the article published on March 29, 1951, under the title Chandless Denies Picking Insurgent G.O.P. Ticket.
The order to be entered on this determination should provide that the plaintiff Chandless serve his proposed amended complaint upon the defendants and apply to the court for permission to file it as the amended complaint that the court is permitting him to file, so that the court may pass upon the question as to whether or not the proposed amended complaint complies with the requirements of this decision.
The remaining or 14th count is brought by all of the plaintiffs against all of the defendants, except the corporation which publishes the Bergen Evening Record, and sounds in conspiracy. The specific acts set forth in the count are the allegedly libelous publications referred to in the first 13 counts. This is the only count in which the defendant Arthur A. Kron is specifically referred to, and as to him no overt act is set out, and the count will therefore be dismissed as to him. The court having determined that the publications referred to in the counts in which the plaintiffs other than Chandless are parties plaintiff are not libelous as to them, and there being no other allegations connecting the defendants with the conspiracy, the 14th count will also be dismissed as to these plaintiffs.
This leaves the action of Mr. Chandless on the 14th count to be disposed of. This will be treated in the same manner as the other counts brought by Mr. Chandless, as to *91 presenting an amended count. It must be borne in mind, however, that as there are no other specific acts charged than the publications, Chandless could not recover damages on a conspiracy to publish the articles and also recover damages for the publication of the articles.
The order entered on the dismissal of this motion should be upon notice unless counsel agree as to its form.