In the Matter of Alan SIMPSON and J. E. Simpson, Plaintiffs,

v.

Charles A. STEEN, Defendant.

Civ. A. No. C–43–54.

United States District Court
D. Utah, Central Division.

Dec. 10, 1954.

Lincoln D. Coit, Coit & Graham, Grand Junction, Colo., Warwick C. Lamoreaux, Salt Lake City, Utah, for plaintiffs.

Henry Ruggeri, Marl D. Gibson, Price, Utah, Mitchell Melich, Moab, Utah, Clair M. Senior, Hugh C. Garner, Salt Lake City, Utah, for defendant.

CHRISTENSON, District Judge.

The complaint contains three counts based respectively upon publications in various newspapers. Defendant has moved for a dismissal of each count on the ground that it fails to state a claim upon which relief can be granted. The principal contentions of the defendant are: (1) That the alleged defamatory matter is not libelous per se (and that therefore, in the absence of actual malice and special damages, the latter not being pleaded, no recovery can be had); (2) That the alleged defamatory material is not libelous per se as to the plaintiffs in any event; and (3) That plaintiffs cannot jointly maintain this action since they have sued for individual damages, the action being not so maintainable by separate individuals.

Plaintiffs' position in the oral argument was (1–2) that the material is libelous per se, not only in general but as concerns the particular plaintiffs, and (3) that since plaintiffs are suing for damages to a partnership of which they are the sole parties in interest, the action is maintainable jointly by them for damages to the partnership. Further contentions are made in plaintiffs'

brief, not urged during oral argument, that in view of Federal Rules of Civil Procedure, Rule 20(a, b), 28 U.S.C.A., the damages suffered individually by the respective defendants, either in a single trial or upon severance can be awarded separately in the present action according to their respective rights; and that at most, only a question of misjoinder is involved, which by the terms of F.R.C.P., Rule 21, 28 U.S.C.A., cannot be raised by motion to dismiss.

The alleged libelous material, as published in the several newspapers mentioned in the complaint under the heading, "Legal Notices", is as follows:

"To Whom It May Concern:

"In April, 1953, Charles Yetter, a consulting geologist, visited the Mi Vada mine of the Utex Exploration Company and stated that he represented New York capital and wished to purchase the Utex property. He was given confidential information concerning Utex and adjoining property. Utex refused to consider the offer which, after examination of the property, he presented.

"Having failed to purchase the Utex property, he returned in July, 1953, together with Simpson Mining Company and Engineer Associates, all of Grand Junction, Colorado; these companies being principally owned by Alan Simpson, J. E. Simpson, Charles Yetter and Henry Clark all of Grand Junction, Colorado.

"This time, this group jumped what are known as the Big Buck claims owned by Donald T. Adams and Dan Hayes of Monticello, Utah. These claims were originally located in 1948, by Dan Hayes and since that time have produced in excess of five thousand tons of uranium ore. Also, at this time, they jumped a portion of Charles A. Steen's claims, who made the original discovery of the famous Mi Vida Mine. At the time they jumped these claims, Yetter and his Associates were well acquainted with the area and knew the prior location of the Steen and Big Buck claims.

"Good faith is essential to the validity of the location of mining claims. In my opinion the act of Yetter and his associates was a most flagrant violation of good faith and breach of confidence.

"The attempted locations by Yetter and his associates were made secretly, clandestinely, surreptitiously and fraudulently, and with the attempt to steal and take from those who, in good faith after considerable hardships, have located their claims according to law. Mr. Yetter and his associates, on numerous occasions, were informed that they were trespassers on the Big Buck and Steen properties, and the purported buyers were, on January 30, 1954, advised on the ground that they were trespassers.

"I am advised that this 'Claim Jumping' is a common practice of Yetter and his associates on other valid located properties on the Colorado Plateau. The legitimate uranium operators will resist by all means within their power every attempt by Mr. Yetter and his associates, or anyone else to steal what they cannot lawfully acquire.

"I regret that Mr. Yetter and his associates are bringing back the conditions which existed in many of the old mining camps when committees of Vigilantes were formed to protect their properties against 'claim jumpers'.

"Charles A. Steen

"CAS/mb

"(Seal)

"Subscribed and sworn to before me this 3rd day of February, 1954.

"Margie M. Shafer

"Notary Public, residing at Moab, Utah

"My Commission expires: October 27, 1957.

"First and last Pub. Feb. 4, 1954."

For the purpose of this motion I must take the allegations of the complaint to be true. Assuming that the article was so published, it seems clear that it was libelous per se with respect to whomsoever is sufficiently identified as the object of the adverse comment, if anyone. Those identified generally as "this group" and "Mr. Yetter" and his associates" are alleged not only to have "jumped" several mining claims, but are stated to have known of prior rights thereto when so doing. It is further charged in substance that their acts were a flagrant violation of good faith and breach of confidence; that they acted secretly, clandestinely, surreptitiously, fraudulently and with an attempt to steal from those who in good faith and after considerable hardship had located their claims according to law; that they had been advised that they were trespassers; that this conduct was their common practice which legitimate uranium prospectors will resist with all their power, it being clearly inferred that the writer regarded such conduct as stealing what cannot lawfully be acquired; and that they were bringing back the conditions which existed in many old mining camps when committees of vigilantes were formed to protect property against "claim jumpers".

It is true, as defendant's counsel points out, that the term "claim jumper" may refer only to one who re-locates abandoned property; but the term, as indicated by the authorities cited by defendant, has other connotations. By the very words employed in the defendant's statement, he did not use the expression in an innocuous sense. He puts the term in quotation marks to express a special meaning and then expressly characterizes, the conduct referred to thereby in the opprobrious terms indicated above.

It is urged by the defendant that although the article uses the terms "steal" or "stealing", no imputation of a criminal offense is involved since the subject-matter of the supposed stealing, if any, would be real estate which cannot be the subject of larceny. There is au-thority to this effect, holding that words otherwise actionable per se as charging larceny, if spoken with relation to a subject of which no larceny was capable of being committed, are not actionable per se. 53 C.J.S., Libel and Slander, § 70, page 116; Patrick v. Shallcross, 123 Neb. 742, 243 N.W. 907, 908. In another connection, but involving an analogous principle, it has been held that when the alleged defamatory language is considered in connection with the whole article and then appears to relate only to matters and things not unlawful or wrongful, no liability could result. Donaghue v. Gaffy, 53 Conn. 43, 2 A. 397.

In Malouf v. Metropolitan Life Ins. Co., 75 Utah 175, 283 P. 1065, 1067, however, it is indicated that in order that language may be actionable as charging crime it is not essential that it should impute the offense with the accuracy or precision of an information or criminal complaint, or that the charge be made in any direct terms, but it is sufficient if the charge be imputed in language which denotes the offense or which might reasonably be expected to convey that meaning to those who happen to read it. Also, outside the strict definition of crime, it appears that where statements can reasonably bear only an interpretation tending to bring a person into contempt, ridicule and disgrace, they may be libelous per se even though the statements do not actually charge the commission of a crime. Lane v. Washington Daily News, 66 App.D.C. 245, 85 F.2d 822; Knapp v. Post Printing & Publishing Co., 111 Colo. 492, 144 P.2d 981. Particularly may this be so if the charge is made in writing rather than orally. Massee v. Williams, 6 Cir., 207 F. 222, 124 C.C.A. 492.

The whole publication must be read and considered together in the sense in which the reader to whom it could be expected to come would ordinarily understand it. Sullivan v. Meyer, 67 App. D.C. 228, 91 F.2d 301; Estill v. Hearst Publishing Co., 7 Cir., 186 F.2d 1017; People v. Ritchie, 12 Utah 180, 42 P. 209. Regarding the article from the

viewpoint mentioned, it seems probable that it may be regarded as containing an imputation of crime, or at least such a charge of conduct as would naturally subject the persons referred to to the public hatred or contempt, or impeaching their honesty or integrity. Utah Code Annotated, 45–2–2; Dwyer v. Libert, 30 Idaho 576, 167 P. 651, Ann.Cas. 1918B, 973. However, it is unnecessary to rest the decision upon the latter conclusions, because it more clearly appears that the statements were designed to injure those to whom reference was made in their business or professional capacities.

■ It is generally actionable per se to charge a person with fraud or dishonesty with respect to his occupation. 53 C.J.S., Libel and Slander, § 50, page 98. The words are ordinarily actionable where they tend to injure one in his profession, trade or business. 53 C.J.S., Libel and Slander, § 32, pages 76–77; Malouf v. Metropolitan Life Ins. Co., supra. Words injurious in this respect may be actionable even though they might not be so if said of a person simply in his private life. White v. Nicholls, 3 How. 266–284, 44 U.S. 266–284, 11 L.Ed. 591; Daily v. De Young, C.C.S.D.N.Y., 127 F. 491.

Newell on "Slander and Libel" (2d Ed.) p. 43, throws considerable light on what actually constitutes "libel per se". It is therein stated:

"Unfortunately, the law of libel has been obscured by a mass of technicalities and subtle refinements. When language is used concerning a person or his affairs which, from its nature, necessarily must, or presumably will, as its natural and proximate consequence, occasion him pecuniary loss, its publication prima facie constitutes a wrong, without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication; and this is all that is meant by the term 'actionable per se'. Therefore, the real practical test, by which to determine whether special damage must be alleged and proved in order to make out a cause of action for defamation, is whether the language is such as necessarily must, or naturally and presumably will, occasion pecuniary damage to the person of whom it is spoken. Pratt v. Pioner-Press Co., 35 Minn. 251, 254, 28 N.W. 708, 709."

The language in the "Legal Notices" is surely susceptible of meaning bringing it within the definition of a publication libelous per se.

■ Assuming, therefore, that the material may be libelous per se as to the plaintiffs, either in their individual or partnership capacities, are they sufficiently identified as the objects of the defamatory statements so that it may be said either as a matter of law or as a debatable fact to be passed upon by the jury that the article is libelous per se as to the plaintiffs?

The derogatory comments are made concerning either "this group" or "Yetter and his associates". These references immediately follow this statement:

"Having failed to purchase the Utex property he (Charles Yetter) returned in June, 1953, together with Simpson Mining Company and Engineer Associates, all of Grand Junction, Colorado; these companies being principally owned by Alan Simpson, J. E. Simpson, Charles Yetter and Henry Clark all of Grand Junction, Colorado."

■ Where a defamatory publication affects only a general class, no member of that class can maintain an action therefor unless the defamatory material is applicable to every member of the class or is especially applicable to a particular member. 53 C.J.S., Libel and Slander, § 11(c), page 55. American Civil Liberties Union, Inc. v. Kiely, City Postmaster, 2 Cir., 40 F.2d 451. It is not sufficient that plaintiff knows that he was the subject of the article or that the defendants knew this when they were writting, but it must appear that third per-

sons must have reasonably understood that the article was written of, and concerning, plaintiff, and that the libelous expressions referred to him. Northrop v. Tibbles, 7 Cir., 215 F. 99, 131 C.C.A. 407; Brewer v. Hearst Publishing Co., 7 Cir., 185 F.2d 846. The language must be shown to refer to plaintiff and if it is not so shown, it is not libelous per se as to him. Campbell v. Post Pub. Co., 94 Mont. 12, 20 P.2d 1063; Owens v. Clark, 154 Okl. 108, 6 P.2d 755; Ryan v. Hearst Publications, Inc., 3 Wash.2d 128, 100 P.2d 24.

▮ If the publication does not defame any ascertainable person, it cannot constitute libel. Noral v. Hearst Publications, Inc., 40 Cal.App.2d 348, 104 P.2d 860; Lynch v. Standard Pub. Co., 51 Utah 322, 170 P. 770; Northrop v. Tibbles, supra.

▮ Yet, the publication of defamatory matter concerning a general class cannot be made always with an assurance of impunity. One who publishes material about a group assumes the risk of its being libelous as to any member thereof. Fenstermaker v. Tribune Pub. Co., 12 Utah 439, 43 P. 112, 35 L.R.A. 611, on rehearing, 13 Utah 532, 45 P. 1097, 35 L.R.A. 611; 53 C.J.S., Libel and Slander, § 159, page 243. A libelous article need not necessarily name the party libelled to give rise to a cause of action. National Refining Co. v. Benzo Gas Motor Fuel Co., 8 Cir., 20 F.2d 763, 55 A.L.R. 406, certiorari denied 275 U.S. 570, 48 S.Ct. 157, 72 L.Ed. 431; Marr v. Putnam, 196 Or. 1, 246 P.2d 509; International Textbook Co. v. Leader Printing Co., C.C., 189 F. 86; Curtiss-Wright Corporation v. Mitchell, D.C., 10 F.Supp. 91. Where a class is so small that immediate identification of each member thereof reasonably follows from the statement, a right of action is usually given as a matter of law, or at least the applicability of the statement is left for the jury. Watts-Wagner Co., Inc., v. General Motors Corporation, D.C., 64 F.Supp. 506; Neiman-Marcus Co. v. Lait, D.C., 107 F.Supp. 96; Curtiss-Wright Corporation

v. Mitchell, supra. One who alleges and proves that the readers of a libelous publication reasonably believe plaintiff was intended, can recover although plaintiff's name was not expressly mentioned. Dewing v. Blodgett, 124 Cal. App. 100, 11 P.2d 1105; Marr v. Putnam, supra; Washer v. Bank of America Nat. Trust & Savings Ass'n, 21 Cal. 2d 822, 136 P.2d 297, 155 A.L.R. 1338.

It has been held in this circuit that while a book did not specifically state that plaintiff was the object of libelous comment, the statements, referring directly to him clearly susceptible of that construction when read in connection with the entire book and taking into consideration the conditions existing at the time of the book's publication, were reasonably calculated to subject the plaintiff to public hatred, odium and contempt and therefore constituted libel per se. Derounian v. Stokes, 10 Cir., 168 F.2d 305. See also Adams v. Carrington Pub. Co., C.C.D.Conn., 160 F. 986.

In the light of these authorities, from a consideration of the article as a whole and its specification of the names of plaintiffs, it sufficiently appears that plaintiffs were among the objects of the derogatory statements.

I do not now pass upon the question of whether the latter appears so clearly and unequivocally as to authorize that finding as a matter of law, or whether the proposition involves a question of fact which should be submitted to the jury; nor do I pass upon the question as to whether the publication can be held as a matter of law to be libelous per se or whether its effect as such involves only a question of fact to be submitted to the jury. It has been variously held that these are matters of fact to be submitted to a jury or questions of law for the determination of the Court. depending upon the nature of the publication and the surrounding circumstances. 53 C.J.S., Libel and Slander, § 223, page 335; Sweeney v. United Feature Syndicate, Inc., 2 Cir., 129 F.2d 904; Lynch v. Standard Pub. Co., supra; Utah State Farm Bureau Federation v.

National Farmers Union Service Corp., 10 Cir., 198 F.2d 20, 33 A.L.R.2d 1186; Swift & Co. v. Gray, 9 Cir., 101 F.2d 976; Sullivan v. Meyer, supra; Knapp v. Post Printing & Publishing Co., supra; National Refining Co. v. Benzo Gas Motor Fuel Co., supra.

Suffice it to say that whether the character of the publication and its application to plaintiffs are for the decision of the Court as matters of law or whether they involve fact questions to submit to the jury, these matters sufficiently appear so as to preclude the Court from dismissing the action on the grounds stated.

The final inquiry must be whether the plaintiffs can maintain this action in its present form by reason of their joint or several interests, as the case may be.

 Persons cannot jointly maintain a cause of action for damages to themselves individually since even though both of them are affected by the same libel, their respective damages may be dependent upon different considerations and will vary in degree; but if the publications affect them in a joint capacity, as in the capacity of partners, a joint action will lie for damages to the joint interest, not including injury to individual reputations. 53 C.J.S., Libel and Slander, § 159, page 243; 68 C.J.S., Partnership, § 208, pages 680, 681; Wright v. Afro-American Company, 152 Md. 587, 137 A. 273, 52 A.L.R. 908; Rosenberg v. J. C. Penney Co., 30 Cal. App.2d 609, 86 P.2d 696; Annotation 52 A.L.R. 912; Bergstrom v. Ridgway-Thayer Company, 53 Misc. 95, 103 N.Y. S. 1093; Walker v. Sheehan, 80 Ga.App. 606, 56 S.E.2d 628; Melcher v. Beeler, 48 Colo. 233, 110 P. 181; Kornblum v. Commercial Advertiser Ass'n, Sup., 164 N.Y.S. 186, affirmed 183 App.Div. 615, 618, 170 N.Y.S. 249; Brooks v. Collier, 3 Ind.T. 468, 58 S.W. 559; Wilson v. Sun Pub. Co., 85 Wash. 503, 148 P. 774; Lewis v. Hayes, 177 Cal. 587, 171 P. 293.

At the oral argument on defendant's motion to dismiss, counsel for plaintiff contended that the cause of action was in favor of the partnership, and damages were not sought for the plaintiffs as individuals. The contrary is urged in plaintiffs' written brief, that is: that the action can be maintained to secure damages suffered individually by the plaintiffs. Recourse to the allegations of the complaint, itself, therefore, is necessary.

 The title is, "In the Matter of Alan Simpson and J. E. Simpson, Plaintiffs vs. Charles A. Steen, Defendant". The addition of the phrase, "In the Matter of", does not seem to have any significance and may be disregarded as surplusage. As far as the title is concerned, then, the action is indicated to be a suit by two individuals. The title need not be considered determinative, however, since a partnership has no entity separate from the individuals who compose it, and if it otherwise appears in the complaint that the action is on behalf of the partnership, the title for that purpose doubtlessly would be adequate.

The only allegations in the complaint which suggest that the plaintiffs may be suing as partners are those contained in paragraph 2, reading:

"* * * That the plaintiff, Alan Simpson, since the year 1944, and the plaintiff, J. E. Simpson, since the year 1947, have engaged in mining operations for reputable mining companies and since October 1, 1952, the plaintiffs have at all times herein mentioned, and now are, engaged in mining operations as partners in operating claims for themselves and others, and in dealing in mining claims for themselves and others * * *."

However, any inference that the action is on behalf of the partnership seems negatived in the very paragraph in which the quoted material appears, which goes on to say, among other things, "* * * That at all times prior to the alleged libel the plaintiffs enjoyed good names and reputations in connection with their mining work and operations."

Other allegations of the complaint appear even more definitely to exclude the idea of a partnership action. The claimed evil motive, malice and ill will with which the alleged libel was published was "toward the plaintiffs". The intent or design of the defendant was to defame "the plaintiffs and to bring them into public disregard as mining engineers and as men". The claimed libel quoted in the complaint referred to no partnership as such but specifically to Alan Simpson and J. E. Simpson, among others. Paragraph 4 alleges that the publication of the article has injured and is injuring "plaintiffs' reputation in the community where they live * * *" (for which injuries as indicated by authorities hereinabove cited, the partnership could not recover damages), and the last paragraph of each count alleges "that the Alan Simpson and J. E. Simpson named in said article are the plaintiffs herein".

■■■ Without passing upon the question of whether a partnership may recover damages affecting the joint partnership interest by reason of a libel against individual members under appropriate circumstances and pleadings, it appears to the Court that the present complaint does not state a claim in favor of any partnership upon which relief can be granted. See Neiman-Marcus Co. v. Lait, supra; also Chandless v. Borg, 24 N.J.Super. 73, 93 A.2d 651, indicating that in an action by an individual for partnership damage, the complaint must set up a special count for the partnership and allege such damage, thus separating the partnership claim from any claim for direct damage to the individuals, and that action for individual damages cannot be maintained jointly in the same count, as partners in their individual capacity are affected differently.

It further appears to me that judgment for libel could not be awarded to the individual plaintiffs on the present complaint since by generally accepted rules in such jointly maintained action damages to the individuals, as such,

are not recoverable. I believe this bar goes deeper than the situations which Fed.Rules Civ.Proc. rules 20(a) and 21, 28 U.S.C.A., were designed to meet. See Wilson v. Sun Pub. Co., supra. The mere fact that the complaint is not broad enough to allege a partnership claim does not authorize the award thereon of a joint judgment, or individual judgments not permitted by established rules of law, on any theory of waiver or otherwise.

■■■ Misjoinder, as such, is not a ground for dismissal, but as under established rules no individual relief can be granted in such joint action, something more than a question of misjoinder is involved. There is authority to the effect that should partners as individuals seek to recover their individual damages in a joint action, such misjoinder may be waived. Vogel v. Bushnell, 203 Mo.App. 623, 221 S.W. 819. It has also been held that in an action brought jointly by individuals, one name could be stricken to permit the other to proceed to a collection of individual damages for libel. Constitution Publishing Co. v. Way, 94 Ga. 120, 21 S.E. 139. However, I do not believe that there has been a waiver by defendants of claimed inability of plaintiffs to recover individual damages through such joint claim, particularly when the motion to dismiss, itself, is predicated on the ground that individual relief cannot be granted on such claim, and because I believe that the objection is more substantial than mere misjoinder. Should I be wrong in this, however, it would seem that plaintiffs could not be prejudiced, since an opportunity to amend will be afforded, by which amendment the plaintiffs may separately state their respective claims in different counts, subject to any further objections which may be available to defendants.

■■■ Lack of jurisdiction in the event this were determined to be a partnership action, as urged by defendant, does not appear indicated. It would seem that the same diversity of citizenship would exist whether the action was

deemed a joint action on behalf of the partnership or individual actions on behalf of the separate plaintiffs, because the partnership has no existence separate from the individuals who compose it. However, having construed the action not as one brought for damage to any partnership interest, this point is immaterial at this time and need be considered only if and when any amendment to secure redress for damage to a partnership interest may be filed.

Defendant's motion to dismiss each count of the complaint is granted, with leave for plaintiffs to file an amended complaint within twenty days from date.